**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Vicente CARRODEGUAS, Guillermo Hernandez-Cartaya, Francisco J. Fernandez, Defendants-Appellants.**

No. 81–6204.

United States Court of Appeals, Eleventh Circuit.

Dec. 5, 1984.

Rehearings Denied Jan. 15, 1985.

**1392**

Jose E. Martinez, English, McCaughan & O'Bryan, Coral Gables, Fla., for Carrodeguas.

William A. Meadows, Jr., South Miami, Fla., Robert C. Josefsberg, Joel S. Perwin, Miami, Fla., for Hernandez-Cartaya.

Irwin J. Block, Fine, Jacobson, Block, Klein, Colan & Simon, P.A., Miami, Fla., for Fernandez.

Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Chief, Appellate Section, Robert E. Lindsay, Terry L. Fredricks, Tax Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before RONEY and JOHNSON, Circuit Judges, and MORGAN, Senior Circuit Judge.

JOHNSON, Circuit Judge:

Appellants Vicente Carrodeguas, Guillermo Hernandez-Cartaya, and Francisco J. Fernandez were officers of WFC Corporation, a large financial organization headquartered in Miami, Florida. This company was engaged primarily in the business of facilitating international loans. Between 1973 and 1978, the company's operations were extremely successful, and each year the appellants agreed to award sizeable cash bonuses to themselves as well as other key officers. The appellants further agreed and instructed the recipients that these bonuses were not to be reported as additional compensation on their income tax returns. The appellants then arranged for the corporation's accounting records to conceal the payment of these bonuses, which totalled well over $100,000 each year.

The appellants were each convicted on one count of conspiring to defraud the United States in the ascertainment, computation, and collection of income and employment taxes. 18 U.S.C.A. § 371. In addition, Carrodeguas was convicted on six counts of violating 26 U.S.C.A. § 7206(1) (making and subscribing income tax forms not believed to be true and correct) and four counts of violating 26 U.S.C.A. § 7206(2) (assisting in the preparation of income tax return forms that were false and fraudulent). Hernandez-Cartaya was also convicted on three counts of violating 26 U.S.C.A. § 7206(1) and four counts of violating 26 U.S.C.A. § 7206(2). Fernandez was also convicted on three counts of violating 26 U.S.C.A. § 7206(1). We affirm the convictions of each appellant on every count.

The appellants join in contesting three issues on appeal. We shall address each of these in turn, before discussing the remaining issues that Hernandez-Cartaya and Fernandez raise separately.

First, the appellants challenge the denial of motions to dismiss their criminal indictments. These motions were based on the contention that the grand jury which handed down the indictments had been drawn from a jury venire lacking sufficient numbers of Hispanics to satisfy the fair cross-section requirement of the Sixth Amendment and the Jury Selection and Service Act of 1968, 28 U.S.C.A. § 1861 *et seq. See Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975).

The denial of the appellants' motions occurred after a special evidentiary hearing in a separate district court combining similar motions made in thirteen other criminal trials. *United States v. Cabrera-Sarmiento,* 533 F.Supp. 799 (S.D.Fla.1982). The district court rejected these challenges because the movants failed to sustain their burden of proving a violation of the fair cross-section requirement, as defined in *Duren v. Missouri,* 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979). The movants had not produced reliable data showing the number of Hispanics living in the relevant community. After hearing an appeal from convictions entered in one of

the combined criminal cases, a panel from this Court recently affirmed the district court's order denying the motions to dismiss. *United States v. Esle*, 743 F.2d 1465 at 1469–76 (11th Cir.1984) (per curiam). We follow this binding precedent and likewise affirm the district court's denial of the appellants' motions to dismiss their indictments.

■ The second issue raised by all appellants concerns the trial court's instructions to the jury. Before charging the jury, the court gave counsel for each appellant a written copy of its proposed instructions. These instructions included a correct charge as to the government's burden of proving guilt beyond a reasonable doubt. After ruling on all objections and incorporating the accepted changes, the court verbally charged the jury in accordance with the written instructions, except for a one-word mistake the appellants now claim constitutes reversible error. From the trial transcript it appears the judge instructed the jury:

> [E]very defendant is presumed by law to be innocent. The law does not require the defendant to prove his innocence. . . .
>
> The Government has the burden of proving him guilty beyond a reasonable doubt, and if it fails to do so, you must acquit him.
>
> Thus, while the Government's burden of proof is a strict or heavy burden, it is not necessary that the defendants' guilt be proved beyond all *reasonable* doubt. It is only required that the Government's proof exclude any reasonable doubt concerning the defendants' guilt. (emphasis added)

The transcript differs from the proposed written instructions which correctly stated at this point that it was not necessary that the defendants' guilt be proved beyond all *possible* doubt. None of the appellants objected further when, after completing the charge, the judge asked if there were objections to the instructions as given.

We acknowledge the mistake and note the inconsistency between its language and that of the preceding and following sentences in the given instructions. Yet we do not review the propriety of particular language in the abstract. Rather, we look to the adequacy of the charge as a whole. *United States v. Park*, 421 U.S. 658, 674–76, 95 S.Ct. 1903, 1912–14, 44 L.Ed.2d 489 (1975); *United States v. Pool*, 660 F.2d 547, 558 (11th Cir.1981) (Unit B). Reading the entire charge satisfies us that the jury was adequately instructed as to the government's burden of proving guilt beyond a reasonable doubt. The trial judge directed the jury to follow the instructions as a whole and, in at least nineteen specific instances, correctly stated that in order to convict a defendant on a particular charge the jury would have to find him guilty beyond a reasonable doubt. In fact, with regard to the three federal statutes the appellants were found to have violated, the specific instructions were that the evidence for each count must show guilt beyond a reasonable doubt. Viewed as a whole, then, the charge fairly advised the jury that guilt could only be imposed absent all reasonable doubt.

In *United States v. Vasilaky*, 168 F.2d 191 (2d Cir.1948), the Second Circuit reviewed a jury charge in which, after stating three times in the course of the instruction that guilt must be proved "beyond a reasonable doubt," the trial judge summarized: "If the Government in this case has failed to establish [its ownership of the property allegedly stolen] *by a fair preponderance of the evidence*, then of course that ends the case, and you will direct a verdict for the defendants." *Id.* at 192. Later in the instruction, the judge again referred to the beyond-a-reasonable-doubt standard. On appeal, the Second Circuit characterized the judge's error as "patently a slip-of-the-tongue mistake" which would have been corrected had the defendant's counsel objected. Instead, the defendant's attorney had stated after the charge that "there is no exception or request to charge." *Id.* The court concluded that the single slip did not mislead the jury and affirmed the appellant's conviction.

This Court has in the past endorsed the *Vasilaky* holding and affirmed a criminal conviction where a trial judge apparently stated that the appellant had conceded an important element of the crime when in fact the appellant had not. *Hoover v. United States*, 358 F.2d 87, 88 (5th Cir. 1966). Again, the appellant's counsel did not object to the jury charge as made. The *Hoover* Court reasoned: "[I]t can hardly be argued that the jury was affected to the detriment of the appellant by this charge when it was obvious that none of the experienced trial lawyers representing the appellant were so affected." *Id.* This comment is equally relevant to the appellants in the present appeal who similarly did not notice the mistake and did not, when asked by the court immediately after it verbally instructed the jury, register any objections to this portion of the instructions. We hold that the trial court's instructions, when considered as a whole, did not mislead the jury as to the government's burden of proving the appellants' guilt beyond all reasonable doubt.

■ The third issue raised by each appellant involves the trial court's refusal to declare a mistrial on motions the appellants made after closing arguments were completed. The basis for these motions was an allegation that the closing argument by counsel for co-defendant Henry Heitman, Jr., whom the jury eventually acquitted, improperly commented upon the appellants' failure to testify.

Heitman was the only defendant to take the stand during the trial. His testimony concerned conversations he had with Hernandez-Cartaya, in which Heitman expressed his desire not to receive the annual bonuses in the form of cash, but rather as non-taxable business perquisites or personal loans. Following Heitman's testimony, the appellants submitted a motion in limine seeking to restrict Heitman's counsel from referring to the failure of other defendants to testify. Heitman's attorney disagreed, arguing he should be able to point out to the jury that only Hernandez-Cartaya could deny the verity of Heitman's testimony and

Hernandez-Cartaya had not taken the witness stand. Under the trial court's ruling, Heitman's attorney could comment on the fact that Heitman had testified, the content of Heitman's testimony, and failure of the government to rebut this testimony. However, he could not comment—either "directly" or "indirectly to the degree... that it might prejudice the other Defendants"—on their decision not to testify. The trial judge refused to permit any reference to Hernandez-Cartaya as the only person who could refute Heitman's testimony because it would seriously prejudice Hernandez-Cartaya's right not to testify.

In his closing argument, Heitman's attorney did not comment directly on the appellants' failure to testify. Instead, he attempted to distinguish Heitman from the other defendants as one who chose not to accept the annual bonuses in an illegal form. The appellants charge that, in referring to Heitman's testimony and characterizing him as different from the other defendants, the attorney indirectly highlighted to the jury the failure of the other defendants to take the witness stand. After a careful study of the closing argument, however, we conclude that in only one instance did Heitman's attorney even come close to commenting indirectly on the appellants' failure to testify at trial, and in this instance the statement was not of such character that the jury would take it to be a comment on the appellants' failure to testify.

Midway through his closing argument, Heitman's attorney stated:

I suppose we can look at Mr. Heitman—and I don't know how you are going to do this, ladies and gentlemen, I don't know how you are going to do this—His Honor is going to tell you during the course of the instructions that you must under your oath, separate each defendant and consider him on trial as though he were on trial alone, all by himself.

Now, that will take some difficult mental gymnastics because somehow or other you are going to have to visualize him

in this corner all alone where you consider his guilt or innocence.

When you do that, I ask you to bear in mind that he explained to you in detail every facet of what he did, did not do, or did know or didn't know.

He subjected himself to the rigors of the power of our government's cross examination with all the help [the government] has..., with all the documents [it] has, with all the help that [it] can be given, and responded,... "[T]hat's just the way it was; that is true."

 We have previously stated: "A mere favorable comment upon the fact that one of several co-defendants testified does not involve the same potential for prejudice as an adverse comment by counsel upon the failure to testify of the other co-defendant." *United States v. Hodges,* 502 F.2d 586, 587 (5th Cir.1974). In determining whether a particular statement constitutes an improper comment on a defendant's failure to testify, the "test... is whether or not the statement was manifestly intended or was of such character that a jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *United States v. Wilson,* 500 F.2d 715, 721 (5th Cir.1974), *cert. denied,* 420 U.S. 977, 95 S.Ct. 1403, 43 L.Ed.2d 658 (1975). The Court cannot find that counsel "manifestly intended to comment on the defendant's failure to testify, if some other explanation for his remark is equally plausible." *United States v. Rochan,* 563 F.2d 1246, 1249 (5th Cir.1977). Moreover, in deciding whether a jury would naturally and necessarily take the statement to be a comment on the defendant's failure to testify, "the question is not whether the jury possibly or even probably would view the challenged remark in this manner, but whether the jury *necessarily* would have done so." *Williams v. Wainwright,* 673 F.2d 1182, 1185 (11th Cir.1982) (emphasis in original). The burden of proof is on the appellants to show, under these principles, that Heitman's attorney manifestly intended to comment upon their failure to testify or that the jury necessarily construed his closing argument as a comment upon their failure

to testify. *United States v. Jones,* 648 F.2d 215, 218 (5th Cir.1981) (Unit B). Because the remarks made by Heitman's attorney were clearly intended to point out that Heitman did not wish to receive cash bonuses and that the government's evidence and cross examination had failed to refute Heitman's testimony, we do not find the remarks improper. They were not of such character that the jury would necessarily take them to be a comment on the appellants' refusal to testify.

 Three remaining issues are raised separately. Citing *United States v. Herring,* 568 F.2d 1099 (5th Cir.1978), Hernandez-Cartaya and Fernandez charge that the trial judge erred in refusing to voir dire the jury about a newspaper article published during its deliberations. The appellants claim the article contained prejudicial material about the defendants and improper comments attributed to the judge. The determination of whether this article was so prejudicial as to require a voir dire of the jurors is within the sound discretion of the trial court. *United States v. Goodman,* 605 F.2d 870, 882 (5th Cir.1979). After reviewing the evidence and the content of the article, we affirm the trial court's exercise of its discretion. Most of the information contained in the article did not go beyond the record as developed at trial. Other information was unrelated to the charges for which the appellants were being tried. Further, the likelihood that the information reached the jurors was small, especially in light of the trial court's specific instructions to the jurors not to read or listen to media accounts concerning the trial. We will not presume that the jurors disregarded these instructions. *Gordon v. United States,* 438 F.2d 858, 873–74 (5th Cir.), *cert. denied,* 404 U.S. 828, 92 S.Ct. 139, 30 L.Ed.2d 56 (1971).

 Fernandez contends the trial court erred in refusing to instruct the jury that a violation of 26 U.S.C.A. § 7207 is a lesser included offense of 26 U.S.C.A. § 7206(1). This contention is foreclosed by the decisions of this Court in *Escobar v.*

United States, 388 F.2d 661, 666 (5th Cir. 1967), *cert. denied*, 390 U.S. 1024, 88 S.Ct. 1411, 20 L.Ed.2d 282 (1968), and *United States v. Gaines*, 690 F.2d 849, 856 (11th Cir.1982), which note the only difference between the two statutes is the requirement in Section 7206 that a false statement be made "under the penalties of perjury." Like the federal tax returns filed in these precedents, the returns filed by Fernandez contained standard perjury clauses. As for Fernandez's claim that no evidence was presented showing he actually signed the returns the government introduced as evidence, which he conceded were true and correct copies of returns on file with the Internal Revenue Service, the fact that Fernandez's name was signed to the returns is *prima facie* evidence that he actually signed them. 26 U.S.C.A. § 6064. Fernandez did not offer evidence rebutting this presumption.

Finally, Fernandez claims that the evidence presented was insufficient to support his convictions. The test for reviewing the sufficiency of evidence to support a conviction is whether, viewing the evidence and the inferences that may be drawn from it in the light most favorable to the government, a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. *United States v. Bell*, 678 F.2d 547, 549 (5th Cir.) (Unit B), *cert. granted*, 459 U.S. 1034, 103 S.Ct. 444, 74 L.Ed.2d 600 (1982). After reviewing the record, we conclude that sufficient evidence exists against Fernandez to support his convictions.

The judgments entered by the trial court are AFFIRMED.