**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Samuel CHIRINOS, Rolanda Guerra, David Martinez, Jose Reyes, Joseph Gonzalez, Enrique Santiesteban, Defendants–Appellants.**

**No. 93–4389.**

United States Court of Appeals, Eleventh Circuit.

May 15, 1997.

John Lipinski, Miami, FL, for S.C.

Jill Traina, Coral Gables, FL, for D.M.

Miguel San Pedro, Richard J. Diaz, Miami, FL, for E.S.

Milton Hirsch, Miami, FL, for J.R.

Glenn B. Kritzer, Eric Cohen, Miami, FL, for J.G.

Peggy Fisher, Dania, FL, for R.G.

Donald F. Chase, Carol Herman, Dawn Bowen, Asst. U.S. Attys., Miami, FL, for U.S.

Before HATCHETT, Chief Judge, DUBINA, Circuit Judge, and COHILL *, Senior District Judge.

HATCHETT, Chief Judge:

In affirming this criminal case appeal, we reject the appellants' claims that the evidence was insufficient, that the prosecutor's remarks in opening and closing arguments prejudiced the appellants, that the district court erred in denying requested jury instructions, that the district court erred in denying a motion to suppress evidence and that the district court erred in sentencing.

## FACTS

In 1992, the Bureau of Alcohol Tobacco and Firearms (ATR) conducted a sting operation in South Florida. At ATF's direction, Horatio Ibarra, a confidential informant, telephoned Enrique Vargas to inform him of a fictitious shipment of 300 kilograms of cocaine. Ibarra suggested to Vargas that they steal the 300 kilograms of cocaine from the purchasers of the shipment. After expressing interest in Ibarra's plan, Vargas told Ibarra that he could enlist the help of David Martinez, Enrique Santiesteban, Joseph Gonzalez, Joseph Reyes, Jose Reyes, Rolando Guerra, and Samuel Chirinos (the Vargas group) to steal the cocaine. Vargas assured Ibarra that he could trust the Vargas group, stating that they had previously "done a job of 600 [kilograms]."

Vargas and Ibarra met to discuss further the proposed theft of the 300 kilograms of cocaine. According to the plan, the Vargas group would travel to an airfield where a

---

* Honorable Maurice B. Cohill, Jr., Senior U.S. District Judge for the Western District of Pennsylvania, sitting by designation.

small airplane was scheduled to airdrop the 300 kilograms of cocaine. Ibarra and his associates would load the cocaine onto a van. Several members of the Vargas group, dressed as police officers with badges and blue lights, would then stop the van as it traveled on the highway and seize the 300 kilograms of cocaine. Various meetings were held to discuss the plan, including meetings on April 30, May 4, May 5 and May 6, 1992. The meetings included the participation of Joseph and Jose Reyes, Chirinos, Santiesteban, Martinez, and Guerra. The Vargas group agreed to divide the 300 kilograms into one-half shares with Vargas and Ibarra to receive 150 kilograms and the other 150 kilograms divided equally among the remaining members of the Vargas group.

On May 7, 1992, the Vargas group traveled to the Opa Locka West airstrip to carry out their plan. An airplane circled the airfield but never dropped the cocaine. The group decided to leave the area and travel to a barbecue restaurant to meet to discuss why the airplane did not drop the cocaine. Following the meeting, Santiesteban and Gonzalez traveled back to the airfield. Prior to their return, agents had placed three duffel bags on the runway to make it appear that the drop had occurred. ATF agents arrested Santiesteban and Gonzalez as they approached the bags. ATF agents arrested the remaining members of the Vargas group in the vicinity of the airstrip. Following their arrest, Santiesteban and Martinez waived their *Miranda* rights and told the ATF agents of their plan to steal the cocaine.

At the time of Santiesteban's arrest, ATF agents performed a pat-down search and found a loaded Browning arms BDA .380 semi-automatic pistol in the waistband of Santiesteban's pants. During an inventory search of one of the Vargas group's vehicles, law enforcement officers also found a State of California private detective badge and a Ruger Mini–14 assault rifle with a loaded magazine.

## PROCEDURAL HISTORY

On May 15, 1992, a federal grand jury returned a two-count indictment against Vargas, Santiesteban, Joseph Reyes, Jose Reyes, Chirinos, Martinez, Gonzalez, and Guerra charging them with conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count I), and using and carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c) and 2 (Count II). Vargas pleaded guilty and agreed to testify for the government against his codefendants. Santiesteban, Jose Reyes, Chirinos, Martinez, Gonzalez, and Guerra entered not guilty pleas and proceeded to a joint jury trial. The district court severed Joseph Reyes's trial from the remaining defendants; he, however, pleaded guilty to the indictment prior to going to trial.

At the conclusion of the joint trial, the jury found Chirinos, Gonzalez, Martinez, Jose Reyes, and Guerra guilty on Count I and not guilty on Count II. The jury found Santiesteban guilty on both Counts I and II. The district court sentenced the appellants as follows: Chirinos to 135 months imprisonment and 5 years supervised release; Gonzalez to 151 months imprisonment and 5 years supervised release; Guerra to 168 months imprisonment and 5 years supervised release; Martinez to 240 months imprisonment and 5 years supervised release; Jose Reyes to 135 months imprisonment and 5 years supervised release; and Santiesteban to 188 months imprisonment on Count I, a consecutive term of 60 months imprisonment on Count II, and 5 years supervised release. Santiesteban, Jose Reyes, Chirinos, Martinez, Gonzalez, and Guerra filed this appeal challenging their convictions on numerous grounds. Santiesteban, Chirinos, and Martinez also challenge the district court's calculation of their sentences.

## ISSUES

We address the following issues: (1) whether sufficient evidence supports Santiesteban's conviction for using or carrying a firearm during and in relation to a drug trafficking offense under 18 U.S.C. § 924(c)(1); (2) whether the prosecutor's remarks in opening and closing statements prejudicially affected appellants' substantial rights; (3) whether the district court erred in denying appellants' requested jury instruc-

tions; (4) whether the district court erred in denying Martinez's motion to suppress his post-arrest statement; and (5) whether the district court erred in sentencing appellants on the basis of possessing 300 kilograms of cocaine.

## DISCUSSION

### A. Santiesteban's Section 924(c)(1) Conviction

#### 1. Sufficiency of the evidence

■ Sufficiency of the evidence is a question of law we review *de novo. United States v. Farris,* 77 F.3d 391, 394 (11th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 241, 136 L.Ed.2d 170 (1996). In determining whether sufficient evidence supports a defendant's conviction, we view the evidence in the light most favorable to the government and draw all reasonable inferences and credibility choices in favor of the jury's verdict. *United States v. Shenberg,* 89 F.3d 1461, 1470 (11th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 961, 136 L.Ed.2d 847 (1997).

Santiesteban challenges his conviction for using or carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). Santiesteban argues that the government failed to produce sufficient evidence to demonstrate that he possessed and used a weapon during and in relation to a drug trafficking crime, and failed to produce evidence to link his carrying the firearm to the drug trafficking crime.

■ Section 924(c)(1) provides in pertinent part:

> Whoever, during and in relation to any crime of violence or drug trafficking crime ... for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years, and if the firearm is a short-barreled rifle, short-barreled shotgun, or semiautomatic assault weapon, to imprisonment for ten years....

18 U.S.C. § 924(c)(1) (1994). In order to sustain a conviction under the "use" prong of section 924(c)(1), the government must show active employment of the firearm, such as firing, attempted firing, brandishing, displaying, bartering, or striking. *Bailey v. United States,* —— U.S. ——, ——, 116 S.Ct. 501, 508, 133 L.Ed.2d 472 (1995); *United States v. Jones,* 74 F.3d 275, 276 (11th Cir.1996); *United States v. King,* 73 F.3d 1564, 1567 (11th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 220, 136 L.Ed.2d 153 (1996). To sustain a conviction under the "carry" prong of section 924(c)(1), the government must show actual transporting of the firearm during and in relation to the drug trafficking offense—i.e., that the defendant carried the firearm on his person or carried the firearm in a vehicle used for drug distribution during and in relation to the drug trafficking offense. *See Farris,* 77 F.3d at 395.

■ In this case, the government presented evidence concerning two firearms: (1) a loaded Browning arms BDA .380 semi-automatic pistol found in the waistband of Santiesteban's pants and (2) a Ruger Mini–14 assault rifle with a loaded magazine found under the back seat of one of the appellant's vehicles. Agents discovered both firearms following appellants' arrests. As Santiesteban correctly points out, neither he nor his codefendants fired, attempted to fire, brandished, displayed, bartered, or struck anyone or anything with the firearms during the course of the conspiracy. The evidence is therefore insufficient to support a jury's finding that Santiesteban "used" the weapons for drug trafficking in violation of section 924(c)(1).

■ Overwhelming evidence, however, supports a finding that Santiesteban carried a firearm during and in relation to a drug trafficking crime in violation of section 924(c)(1). First, Santiesteban's codefendant, Vargas, testified that he, Santiesteban and the other codefendants planned to steal a shipment of 300 kilograms of cocaine from the Opa Locka West airstrip. Second, ATF agents arrested Santiesteban at the Opa Locka West airstrip as he approached three duffel bags represented to him as containing cocaine. Third, at the time of Santiesteban's arrest agents seized a semi-automatic weap-

on from the waistband of his pants.[1] Fourth, agents seized a mini-assault rifle from the back seat of the vehicle in which Santiesteban traveled to the airstrip. This vehicle, along with the other two vehicles the appellants traveled in, could have transported 300 kilograms of cocaine from the airstrip. We therefore find the evidence sufficient to support the jury's finding that Santiesteban carried a firearm during and in relation to a drug trafficking offense.

### 2. Erroneous jury instruction

In the alternative, Santiesteban asserts that he is entitled to a new trial on the section 924(c)(1) issue because the district court failed to instruct the jury on the different requirements of proof under the "use" and "carry" prongs of section 924(c)(1). Specifically, Santiesteban argues that the jury could have convicted him on the basis that he "used" the firearms in violation of section 924(c)(1). As we previously stated, the evidence is insufficient to sustain Santiesteban's conviction on the ground that he "used" a firearm during and in relation to a drug trafficking offense. We therefore must determine whether the district court improperly instructed the jury on the section 924(c)(1) count and, if so, whether the improper instruction warrants reversal of Santiesteban's conviction.

■■ We apply *de novo* review when determining whether the district court misstated the law when instructing the jury or misled the jury to the prejudice of the defendant. *United States v. Chandler,* 996 F.2d 1073, 1085 (11th Cir.1993), *cert. denied,* 512 U.S. 1227, 114 S.Ct. 2724, 129 L.Ed.2d 848 (1994). In instructing the jury on the section 924(c)(1) count, the district court stated:

It must be proved beyond a reasonable doubt that the defendant knowingly used or carried a firearm described in the indictment while committing such drug trafficking. A drug trafficking crime means any felony punishable under the Controlled Substance Act, that's 21 United States Code, Section 801 and sections thereafter. Count 1, that is the conspiracy to possess cocaine with the intent to distribute,

charges a drug trafficking crime within the meaning of Title 18, Section 924(c). In order for the government to sustain its burden of proof that the defendant used or carried a firearm, it is not necessary for it to be established that the firearm was fired, brandished or even displayed during the drug trafficking offense. However, mere presence of a firearm does not constitute use within the meaning of Title 18, Section 924(c). Rather possession of a firearm constitutes use or carrying if the possession was an integral part of and facilitated the commission of the drug trafficking crime.

In light of the Supreme Court's recent holding in *Bailey* that possession of a firearm without active employment of that firearm cannot sustain a conviction under the "use" prong of section 924(c)(1), we hold that the district court erred in instructing the jury that it could find that Santiesteban "used" a firearm in violation of section 924(c)(1) merely because he possessed a firearm as an integral part of the drug trafficking crime. *See Bailey,* —— U.S. at ——, 116 S.Ct. at 508.

■■ Our finding that the district court erred in instructing the jury, however, does not end our inquiry. An erroneous jury charge only entitles the defendant to reversal of his conviction and remand for a new trial on the count in question when a reasonable likelihood exists that "the jury applied the instruction in an improper manner." *Chandler,* 996 F.2d at 1085. This being said, we are convinced that the jury found Santiesteban guilty of "carrying," and not "using," the semi-automatic pistol in violation of section 924(c)(1). In reaching this conclusion, we note that the indictment in Count II charged Santiesteban and each of his codefendants with knowingly using and carrying the semi-automatic pistol and the assault rifle. The jury, however, only convicted Santiesteban on this count. At trial, Santiesteban was the only defendant against whom the government presented evidence of carrying a firearm on his person—the semi-automatic pistol. Considering that this fact is the only

---

1. An ATF agent tested the semi-automatic weapon and found it operational.

difference between the evidence presented against Santiesteban and his codefendants with respect to the section 924(c)(1) charge, and that the jury found the codefendants not guilty of the section 924(c) charge, we conclude that a reasonable likelihood does not exist that the jury found Santiesteban "used" the firearms in question during and in relation to a drug trafficking offense. Accordingly, we hold that the erroneous jury charge did not affect Santiesteban's right to a fair trial.

B. Use of 404(b) Evidence in Government's Opening Statement

██ Appellants Chirinos, Guerra and Martinez appeal their convictions contending that the district court abused its discretion in allowing the government to refer to highly prejudicial evidence in its opening statements prior to the district court ruling on the admissibility of the evidence at trial. The evidence in question involved the police stop of codefendant Joseph Reyes's car on May 23, 1991, in which appellant Martinez was a passenger. During the stop, the police found a bag inside the car containing handcuffs, a blue light, two loaded guns, and police caps. This police stop occurred one year prior to the events for which the appellants are charged. On the day of appellants arrest in this case, however, ATF agents seized a State of California private detective badge from one of the appellant's vehicles.

Prior to trial, the government gave notice to the defense of its intent to introduce the evidence of the police stop at trial pursuant to Federal Rule of Evidence 404(b). The defense objected to the introduction of the evidence and moved to exclude the evidence from trial on the ground that the prejudice resulting from the evidence substantially outweighed its probative value. At the pretrial hearing, the district court advised the parties that it would rule on the motion to exclude the evidence in advance of trial. The defense, at that time, moved to exclude any reference to the police stop from the government's opening statement pending the district court's ruling of the admissibility of the evidence at trial. The district court denied the motion stating, "[t]he government, just

like you, takes its chances on opening statement."

The trial commenced on November 30, 1992. Prior to the opening arguments, the district court instructed the jury that opening statements did not constitute evidence. Thereafter, the prosecutor made the following remarks:

You are also going to find during the course of the trial that there's something known in law as similar act evidence. When individuals have done something similar in their past, jurors can consider it to determine if somebody was an active participant, knowing participant, had the criminal intent to do the crime he is charged with. On May 23, 1991, David Martinez was stopped by Hialeah Gardens Police Department. He was riding as a passenger in the car of Joey Reyes. Remember Joey Reyes, the point of contact of all these defendants. Joey Reyes was driving. David Martinez was a passenger. Found inside the car was an equipment bag. Inside the equipment bag, blue lights, police emergency lights, handcuffs, two loaded guns, police caps. You will be able to take that evidence and look at it and say, "Did David Martinez really know what was going on on May 7? Was he an active participant?"

The defense also made opening remarks. During the defense's opening argument, Martinez's trial counsel told the jury that the police did not arrest Martinez or charge him with a crime as a result of the May 23rd police stop. Later in the trial, the district court ruled the evidence of the police stop inadmissible. At the close of the evidence, the district court, on two separate occasions, again instructed the jury that the government and defense counsel's arguments did not constitute evidence.

██ Although the district court ultimately ruled that the government could not introduce the evidence of the police stop during the trial, appellants argue that the jury's hearing about the police stop during opening arguments unduly prejudiced their case and denied them their right to a fair trial. We review the district court's evidentiary rulings for abuse of discretion. *United*

*States v. Walker,* 59 F.3d 1196, 1198 (11th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 547, 133 L.Ed.2d 450 (1995). Rule 404(b) of the Federal Rules of Evidence permits the district court to admit evidence of other crimes, wrongs, or acts of the defendant to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial...." Fed.R.Evid. 404(b). Although relevant, district courts are not to admit rule 404(b) evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." Fed. R.Evid. 403. Because rule 404(b) evidence has the potential to unduly prejudice the defendant's case, the district court should rule on the admissibility of such evidence prior to trial whenever possible.

In this case, the district court instructed the jury, prior to hearing opening arguments, that arguments of the government and defense counsel did not constitute evidence. The district court repeated this cautionary instruction on at least two occasions after the close of evidence. Although we believe the better course of action for the district court in this case would have been for it to rule on the admissibility of the 404(b) evidence prior to allowing the government to mention the incident in its opening argument, we cannot conclude that the district court abused its discretion in allowing the government to reference the 404(b) evidence in light of the district court's numerous cautionary instructions to the jury. Because we believe the cautionary instructions adequately cured the prejudice appellants suffered from the government's referencing of the police stop, we find no abuse of discretion.

### C. Claims of Prosecutorial Misconduct

■ Notwithstanding our holding that the district court did not abuse its discretion

in allowing the government to reference the 404(b) evidence prior to ruling on its admissibility, appellants Chirinos, Guerra and Martinez argue that the prosecutor committed prosecutorial misconduct in using the 404(b) evidence in his opening statement and seek reversal of their conviction on this basis.[2] "Prosecutorial misconduct is a basis for reversal only if, in the context of the entire trial and in light of any curative instruction, the misconduct may have prejudiced the substantial rights of the accused." *United States v. Beasley,* 72 F.3d 1518, 1525 (11th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 2570, 135 L.Ed.2d 1086 (1996). This court will only reverse a conviction on the basis of prosecutorial misconduct "if that misconduct is so pronounced and persistent as to 'permeate the entire atmosphere of the trial.'" *United States v. Elkins,* 885 F.2d 775, 787 (11th Cir.1989) (quoting *United States v. McLain,* 823 F.2d 1457, 1462 (11th Cir. 1987)), *cert. denied,* 494 U.S. 1005, 110 S.Ct. 1300, 108 L.Ed.2d 477 (1990).

■ To establish a claim of prosecutorial misconduct, a defendant must first prove that the prosecutor made an improper remark. *United States v. Obregon,* 893 F.2d 1307, 1310 (11th Cir.), *cert. denied,* 494 U.S. 1090, 110 S.Ct. 1833, 108 L.Ed.2d 961 (1990). If the defendant cannot show that the prosecutor's conduct was improper, the prosecutorial misconduct claim must fail. We conclude that the prosecutor's opening remarks concerning the 404(b) evidence were not improper because the prosecutor had a reasonable belief that the district court would admit the 404(b) evidence at the time he made such statements. In reaching this conclusion, we acknowledge that this court condemns the practice whereby a prosecutor refers to evidence in opening statement that the prosecutor never intends to introduce or reasonably knows cannot be introduced at trial. *See Obregon,* 893 F.2d at 1310. The prosecutor in this case referred to evidence he would

---

2. The government urges this court to review its remarks regarding the police stop under the plain error standard because appellants did not reassert their objection to the prosecutor's references to the rule 404(b) evidence during the opening statement at trial. We find that the appellants sufficiently preserved their objection during the pretrial hearing to the government referencing the rule 404(b) evidence in its opening statement. We therefore reject the government's suggestion to apply plain error review.

have produced had the district court ruled it admissible.

■ Even assuming the prosecutor's referencing of the 404(b) evidence constituted prosecutorial misconduct, the remarks did not so permeate the appellants' trial such that it denied appellants a fair trial. First, the prosecutor refrained from referencing the 404(b) evidence once the district court ruled it inadmissible. Second, the district court properly instructed the jury that the opening argument did not constitute evidence. Third, Martinez's counsel responded to the prosecutor's reference to the 404(b) evidence during his opening statement, pointing out that the police did not charge Martinez with a crime as a result of the May 23 police stop. In light of the fact that the prosecutor refrained from referring to the 404(b) evidence during the remainder of the trial and the district court's curative instructions, appellants have failed to show reversible error.[3]

■ Appellants Reyes, Chirinos and Gonzalez also challenge their convictions on the basis of prosecutorial misconduct. They contend that the prosecutor improperly commented on their exercise of their right to remain silent and their right not to present a defense when the prosecutor noted the defense's failure to contradict Vargas's testimony.

■ To determine whether a prosecutor has impermissibly commented on a defendant's decision not to testify or present a defense, courts must inquire whether the statement "was manifestly intended or was of such character" that the jury would necessarily construe it as a comment on the failure of the accused to testify. *United States v. Carrodeguas,* 747 F.2d 1390, 1395 (11th Cir. 1984), (internal quotation marks omitted), *cert. denied,* 474 U.S. 816, 106 S.Ct. 60, 88 L.Ed.2d 49 (1985). This court will not find that a prosecutor manifestly intended to comment on a defendant's failure to testify if some other explanation for the prosecutor's remark is equally plausible. *Carrodeguas,*

747 F.2d at 1395. "[I]n deciding whether a jury would naturally and necessarily take the statement to be a comment on the defendant's failure to testify, 'the question is not whether the jury possibly or even probably would view the challenged remark in this manner, but whether the jury necessarily would have done so.'" *Carrodeguas,* 747 F.2d at 1395 (quoting *Williams v. Wainwright,* 673 F.2d 1182, 1185 (11th Cir.1982)) (emphasis omitted).

■ Appellants assert that the following prosecutorial remarks impermissibly commented on their failure to testify and present a defense:

> [Prosecutor:] Let's look at this house. Remember when [defense counsel] asked Mr. Vargas to draw a map of the house? You all notice any·changes on it indicating anything was wrong? Did you hear any testimony coming from this box to indicate that a single room was not properly diagramed?
>
> . . . .
>
> And the photographs ... that Mr. Vargas testified to. Who is the only person who testified to these photographs? Mr. Vargas said this is the room. Did you hear anyone come in and say this isn't the room? ....

The defense timely objected to these remarks. The district court overruled their objections. Appellants also take issue with this comment:

> When you hear all of the evidence, remembering what you have heard from the witness stand and recollecting that the assertions made by defense counsel were only by themselves, nothing from the witness stand, and that it was $300,000 [defendants intended to steal], not 300 kilograms of cocaine, you will find that that defense is as phony as this dollar bill.

The defense did not raise an objection to these remarks.

We do not find that the remarks at issue constituted a comment on the defendants' exercise of their right not to testify or pres-

---

3. Appellants also contend that the district court erred in allowing the prosecutor to mention that the appellants had allegedly stolen 600 kilograms of cocaine in the past. This contention lacks merit and does not warrant discussion.

ent a defense. Rather, we believe the argument constitutes a proper comment on appellants' failure to have presented evidence that contradicted the testimony of the government's key witness, Vargas. Because it is not improper to comment on the failure of the defense, as opposed to the defendant, to counter or explain the evidence, we find no prosecutorial misconduct. *See United States v. Griggs,* 735 F.2d 1318, 1321 (11th Cir. 1984). We also find that the character of the remarks is not such that the jury would naturally and necessarily construe them as a comment on the failure of the accused to testify. In fact, we note that the district court on at least two occasions instructed the jury that the law does not require a defendant to testify to prove his innocence or to produce any evidence at all, and advised them not to consider appellants' failure to testify "in any way during [their] deliberations." In light of our interpretation of the prosecutorial remarks at issue and the district court's curative instructions, this prosecutorial misconduct claim also fails.

 Finally, appellants Reyes, Chirinos and Gonzalez contend that the prosecutor improperly argued that the jury could consider the post-arrest confessions of two non-testifying codefendants, Santiesteban and Martinez, against them. It is well established that where two defendants are tried jointly the district court cannot admit the pretrial confession of one of the defendants against the other, unless the defendant who made the confession takes the stand. *Richardson v. Marsh,* 481 U.S. 200, 206, 107 S.Ct. 1702, 1706–07, 95 L.Ed.2d 176 (1987). This is because the admission of the codefendant's confession would violate the defendant's rights under the Confrontation Clause of the Sixth Amendment. *Richardson,* 481 U.S. at 206, 107 S.Ct. at 1706–07. The admission of a nontestifying codefendant's confession with the proper limiting instruction, however, does not violate the Confrontation Clause when the district court redacts the confession to eliminate any reference to the defendant. *Richardson,* 481 U.S. at 211, 107 S.Ct. at 1709.

In this case, the district court redacted the post-arrest statements of Martinez and San-

tiesteban to eliminate any reference to the appellants and instructed the jury that it could only consider the post-arrest statements against the defendants who made them. Appellants argue that the prosecutor's remarks rendered the redaction and the district court's cautionary instructions meaningless in contravention of the Supreme Court's holding in *Richardson.*

Appellants' reliance on *Richardson* is misplaced. During closing argument, the prosecutor stated:

> Remember the statements of Enrique Santiesteban and remember the statements of David Martinez. Let's go through each statement and see if you remember Mr. Vargas similarly testifying as to the events that transpired during this conspiracy that each and every defendant is charged with.

These remarks read in context demonstrate that the prosecutor in this case did not argue to the jury that it could consider the post-arrest statements of Martinez and Santiesteban as direct evidence of the appellants' guilt. Undeniably, such an argument would contravene the Court's holding in *Richardson,* and therefore constitute an improper argument. Rather, the prosecutor in his closing argument simply pointed out that Vargas's testimony corroborated Martinez's and Santiesteban's post-arrest statements. Because evidence incriminating on its face such as a post-arrest statement differs in the practical effect from evidence requiring linkage—i.e., Vargas's testimony links the post-arrest statements of Martinez and Santiesteban to the appellants—the prosecutor's remarks do not constitute an improper argument. *See Richardson,* 481 U.S. at 208, 107 S.Ct. at 1708 ("evidence requiring linkage differs from evidence incriminating on its face in the practical effects"). Even assuming for the sake of argument that the remarks in question constitute an improper argument, we find no reversible error because the district court instructed the jury that it could not consider the post-arrest statements against the appellants. *See Richardson,* 481 U.S. at 211, 107 S.Ct. at 1709 ("juries are presumed to follow their instructions").

For the reasons stated in this section, we hold that appellants' claims of prosecutorial misconduct fail as a matter of law. Next, we address Gonzalez's and Santiesteban's contentions that the district court committed reversible error in declining to give their requested jury instructions.

## D. Requested Jury Instructions

 This court reviews the district court's refusal to give a defendant's requested jury instruction for abuse of discretion. *United States v. Morales,* 978 F.2d 650, 652 (11th Cir.1992). The district court should instruct the jury on the defendant's defense theory if the theory has a foundation in evidence and legal support. *United States v. Williams,* 728 F.2d 1402, 1404 (11th Cir. 1984). The district court, however, is not required to give the requested jury instruction if it would not have assisted the jury in resolving the issues presented to it. *United States v. Phelps,* 733 F.2d 1464, 1473 (11th Cir.1984). In determining whether the district court abused its discretion in refusing to give the requested jury instruction, this court considers three factors: (1) whether the requested instruction is a substantially correct statement of the law; (2) whether the jury charge given addressed the requested instruction; and (3) whether the failure to give the requested instruction seriously impaired the defendant's ability to present an effective defense. *Morales,* 978 F.2d at 652; *Williams,* 728 F.2d at 1404. We first address the merits of Gonzalez's contention.

 Gonzalez contends that the district court erred in refusing to instruct the jury that it could not convict him of conspiracy to possess cocaine with the intent to distribute if it found he intended to steal "something other than cocaine." On cross-examination, Gonzalez's counsel elicited testimony from an ATF agent that the three duffel bags located on the airstrip could hold $300,000 but could not hold 300,000 kilograms of cocaine. During closing argument, Gonzalez's counsel argued that Gonzalez did not intend to steal 300 kilograms of cocaine, but, rather, Gonzalez believed that he and his codefendants agreed to steal $300,000. At the charge conference, Gonzalez asked the district court to

instruct the jury on his theory of defense. The district court denied Gonzalez's request. Although the district court instructed the jury properly concerning reasonable doubt and the elements of conspiracy, Gonzalez argues that the district court's jury instructions were woefully inadequate to apprise the jury of the essence of his defense.

We note that Count I of the indictment charged Gonzalez with conspiring to knowingly possess with the intent to distribute cocaine. Gonzalez requested the district court to instruct the jury that it could not find him guilty of Count I if it found he intended to possess something other than cocaine. Gonzalez's requested instruction is a correct statement of law because the crime charged, conspiracy to possess cocaine with the intent to distribute, requires that the government prove that Gonzalez had the specific intent to conspire to possess cocaine. The jury instruction given did not substantially address the requested jury instruction. This court therefore must now consider whether the district court's failure to give the requested jury instruction seriously impaired the defendant's ability to present an effective defense.

As previously discussed, the district court permitted Gonzalez's counsel to elicit testimony from an ATF agent that the duffel bags on the airstrip could not hold 300 kilograms of cocaine, but could hold $300,000. The district court also permitted counsel to argue during closing argument that Gonzalez believed he entered into an agreement with codefendants to commit a theft of $300,000 and knew nothing of his codefendants' intention to steal cocaine. In light of the broad scope of cross-examination and counsel's closing argument, we conclude the district court's refusal to give the requested jury instruction did not impair Gonzalez's ability to present an effective defense. Accordingly, we hold that the district court did not abuse its discretion in refusing to give Gonzalez the instruction he requested.

 Santiesteban also contends the district court committed reversible error in failing to give an instruction on his theory of defense. At the charge conference, Santiesteban requested an instruction on entrap-

ment. The district court denied his request. Santiesteban argues on appeal that he is entitled to an instruction on entrapment because the government initiated the criminal activity through the reverse sting operation.

█ A defendant is not entitled to an entrapment instruction unless he first shows "some evidence, more than a scintilla, that government agents induced him to commit the offense." *United States v. Timberlake,* 559 F.2d 1375, 1379 (5th Cir.1977).[4] Once the defendant meets this initial burden, "the question of entrapment becomes a factual one for the jury to decide. In that situation the defendant is entitled to have his defensive theory of the case put before the jury with the appropriate instructions from the trial judge." *Timberlake,* 559 F.2d at 1379 (citations omitted). In this case, Santiesteban presented no evidence that a government agent induced him to commit the crime. The record clearly reveals that Santiesteban's co-defendant, Vargas, and not the government's confidential informant, Ibarra, approached him regarding the plan to steal the cocaine. Because no evidence exists to support a claim of entrapment, the district court properly denied Santiesteban's request to give an entrapment instruction.

E. Motion to Suppress Post-Arrest Statements

█ Prior to trial, Martinez filed a motion to suppress his post-arrest statements on the ground that he did not effectively waive his *Miranda* rights. After conducting an evidentiary hearing on Martinez's motion to suppress, the district court denied his motion, finding that Martinez knowingly and voluntarily waived his *Miranda* rights. Martinez contends that the district court reached this determination in error.

█ We review the district court's findings of fact on a motion to suppress evidence for clear error and the district court's application of the law to those facts *de novo. United States v. Diaz–Lizaraza,* 981 F.2d 1216, 1220 (11th Cir.1993). It is well established that "[t]he government must prove by a preponderance of the evidence that [the defendant] made a knowing, voluntary and intelligent waiver of his *Miranda* rights." *Farris,* 77 F.3d at 396. At the evidentiary hearing, Martinez testified that prior to signing the ATF's waiver of rights form he repeatedly invoked his right to counsel. In spite of his numerous requests for counsel, Martinez testified that ATF agents continued to questioned him. Special Agent Arthur Cullen testified that he advised Martinez of his rights immediately after Martinez's arrest and prior to beginning questioning. Agent Cullen also testified that Martinez read the ATF's standard form advising defendants of their right to remain silent and have counsel present, that Martinez signed the form indicating that he understood his rights, and that Martinez decided to waive his rights. Agent Cullen further testified that no ATF agents made threats or promises to Martinez in exchange for his confession.

At the conclusion of the evidentiary hearing, the district court found Agent Cullen's testimony more credible than that of Martinez. Based upon its credibility determination, the district court concluded that Martinez made a knowing and intelligent waiver of his right to remain silent. We must accept the district court's credibility determination "unless we are left with 'the definite and firm conviction that a mistake has been committed.'" *United States v. Holloway,* 74 F.3d 249, 252 (11th Cir.1996) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). Finding no clear error in the district court's credibility determination, we affirm the district court's denial of Martinez's motion to suppress.

F. Sentencing

█ Finally, appellants Santiesteban, Chirinos and Martinez challenge the district court's determination of the drug quantity in calculating their sentences. "This court reviews the trial court's determination of the

---

**4.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), this court adopted as binding precedent all decisions of the former Fifth Circuit decided prior to October 1, 1981.

quantity of drugs used to establish a base offense level for sentencing purposes under the clearly erroneous standard." *United States v. Carroll,* 6 F.3d 735 (11th Cir.1993) (quoting *United States v. Robinson,* 935 F.2d 201, 205 (11th Cir.1991)), *cert. denied,* 510 U.S. 1183, 114 S.Ct. 1234, 127 L.Ed.2d 577 (1994).

Appellants contend that the district court clearly erred in sentencing them on the basis of possessing 300 kilograms of cocaine because: (1) the duffel bags placed on the airstrip did not actually contain cocaine; (2) a government agent arbitrarily determined how much cocaine the reverse sting operation would involve; and (3) the duffel bags placed on the airstrip did not have the capacity to hold 300 kilograms of cocaine. Instead of predicating their sentence on the 300 kilograms, appellants argue that the district court should have sentenced them according to the amount of cocaine the government actually seized—i.e., nothing, because the cocaine was fictitious—or the amount that they each expected to receive as their proportionate share of the 300 kilograms of cocaine. Additionally, Martinez asserts that he only had a minor role in the conspiracy; therefore, he argues that the district court should not have attributed to him the same amount of cocaine it attributed to his codefendants. We reject each of these argument for the reasons stated below.

The commentary to the United States Sentencing Guidelines directs the sentencing judge to approximate the quantity of drugs for purposes of calculating a defendant's sentence when no seizure of drugs has occurred or the amount seized does not reflect the scale of the offense. *See* U.S.S.G. § 2D1.1, comment n. 12 (1992). Agents seized no cocaine in this case. The preponderance of the evidence, however, established that all of the appellants knew that the scheme entailed stealing 300 kilograms of cocaine. Vargas testified as to the 300 kilogram amount and division of the 300 kilograms among the appellants. Considering the level of participation of each of the appellants and the evidence in this case, we find no clear error with the district court attributing 300 kilograms of cocaine to each of the appellants in calculating their sentences. Accordingly, we hold that the district court properly calculated appellants' sentences.

## CONCLUSION

For the reasons stated in this opinion, we affirm the convictions and sentences of all appellants.

AFFIRMED.