[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 20, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-13811
Non-Argument Calendar

_____

D. C. Docket No. 04-00051-CR-FTM-33-DNF

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DEON ANTONIO CHEALY,
a.k.a. Deon Antonio Cheely,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(July 20, 2006)**

Before TJOFLAT, ANDERSON and BIRCH, Circuit Judges.

PER CURIAM:

Deon Antonio Chealy appeals his conviction for possession of a firearm and

ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and his resulting 200-month sentence, imposed under the Armed Career Criminal Act, 18 U.S.C. § 924(e) ("ACCA").  Chealy raises four issues on appeal: (1) did the district court err by denying his motion to suppress statements he made to police; (2) did the district court abuse its discretion by admitting Federal Rule of Evidence 404(b) evidence of a recent drug deal at trial; (3) is § 922(g) unconstitutional on its face and as applied to him; and (4) did the use of prior convictions in sentencing him under the ACCA violate his Sixth Amendment right to a jury trial.

Upon review of the record and consideration of the parties' briefs, we discern no reversible error.

## I.  Motion to Suppress

On appeal, Chealy argues that the district court erred by finding that he knowingly and voluntarily waived his Miranda[1] rights because the evidence presented at the suppression hearing demonstrated that the confession in this case was coerced.  Based on the totality of the circumstances— being stopped in an aggressive manner, being approached with guns drawn, remaining handcuffed for the entire interrogation in an abandoned parking lot, implied promises of leniency for his cooperation, the lack of an explicit waiver on the Miranda card used to read

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Chealy his rights, and Lee County Narcotics Detective Paul Trombley's poor recollection of what rights Chealy was advised—Chealy argues that his statements to the police should have been suppressed because his waiver, if there even was a waiver, was involuntary.

"We review the district court's findings of fact on a motion to suppress evidence for clear error and the district court's application of the law to those facts de novo." United States v. Chirinos, 112 F.3d 1089, 1102 (11th Cir. 1997). "It is well established that '[t]he government must prove by a preponderance of the evidence that [the defendant] made a knowing, voluntary and intelligent waiver of his Miranda rights.'" Id. (citation omitted) (brackets in original). When considering a ruling on a motion to suppress, all facts are construed in a light most favorable to the successful party. United States v. Behety, 32 F.3d 503, 510 (11th Cir. 1994). As for credibility determinations, we "must accept the district court's credibility determination unless we are left with the definite and firm conviction that a mistake has been committed." Chirinos, 112 F.3d at 1102 (internal quotations omitted).

In Miranda, the Supreme Court considered the scope of the Fifth Amendment privilege against self-incrimination and held that the government "may not use statements, whether exculpatory or inculpatory, stemming from

3

custodial interrogation from the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. at 444, 86 S.Ct. at 1612. Accordingly, the Supreme Court delineated the following procedure that, although not constitutionally mandated, safeguards the right against compelled self-incrimination: (1) before a person in custody is interrogated, he must be informed in clear and unequivocal terms of his right to remain silent; (2) the admonition against self-incrimination must be accompanied by an explanation that anything said can and will be used against the individual in court; (3) the person must be clearly informed that he has the right to consult with a lawyer and to have a lawyer with him during the interrogation; and (4) the advice of the right to counsel must be accompanied by the explanation that, if the person is indigent, a lawyer will be appointed to represent him. Id. at 467-73, 86 S.Ct. at 1624-27.

As with many rights, the accused may waive the right against self-incrimination, so long as the waiver is voluntary, knowing, and intelligent. Id. at 444, 86 S.Ct. at 1612. A waiver is effective where the "totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension" of the Miranda rights being waived. Moran v. Burbine, 475 U.S. 412, 421, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986)

4

(internal quotations omitted). However, we have recognized that a statement is not given voluntarily if it is "extracted by any sort of threats or violence, or obtained by any direct or implied promises, or by the exertion of any improper influence." United States v. Veal, 153 F.3d 1233, 1244 n.14 (11th Cir. 1998) (internal quotations omitted).

In the present case, the district court's conclusion that Chealy was read his Miranda rights, understood those rights, and knowingly and voluntarily waived them is amply supported. Taking the facts in a light most favorable to the government, Chealy was pulled over pursuant to a traffic stop and stopped only after he was cut off by a second police cruiser. The officers testified that they did not recall having their guns drawn when they approached Chealy's car, although had they done so, Trombley testified that such an action was appropriate because Chealy was known to have outstanding felony warrants. After handcuffing Chealy and placing him under arrest, the officers moved to an abandoned bank parking lot, out of the way of traffic.

The testimony further established that Trombley never displayed his gun while questioning Chealy in the back of the patrol car, and that Chealy did not appear under the influence of drugs or alcohol or otherwise appear incoherent. Trombley obtained a card containing the standard Miranda warnings, and read the

5

warnings to Chealy, who indicated that he understood the rights and agreed to answer Trombley's questions. Furthermore, the record does not reflect that Trombley offered Chealy any promises, but rather stated to Chealy that, while the state of Florida could do many things for Chealy on the drug charge, there was nothing that could be done for him in the state of Georgia, where he had outstanding warrants.

While Chealy took the stand at the hearing and denied having ever been read his Miranda rights and disputed the officers' version of events, he admitted that Trombley did not interrogate him with a gun drawn. With two conflicting stories, the court was left to make a credibility determination, one which this Court is not in a position to reject absent a firm conviction that a mistake has been made. See Chineros, 112 F.3d at 1102. Here, Chealy offered no evidence to show that the district court's factual finding that the officers' testimony was not credible.

Lastly, Trombley's statements to Chealy regarding the state having many options on the drug charge was not sufficient to render Chealy's statements involuntary. "A statement made by a law enforcement agent to an accused that the accused's cooperation would be passed on to judicial authorities and would probably be helpful to him is not a sufficient inducement so as to render a subsequent incriminating statement involuntary." United States v. Davidson, 768

6

F.2d 1266, 1271 (11th Cir. 1985). Informing Chealy that nothing could be done for him in Georgia, but that the state could possibly do "many things" on the drug charge did not render Chealy's statements involuntary, especially in light of Trombley's testimony that he made clear that he could not make any promises. Because the district court did not err by finding that Chealy had knowingly and voluntarily waived his <u>Miranda</u> rights, the court properly denied the motion to suppress.

## II. Fed.R.Evid. 404(b)

Chealy argues that the district court erred by permitting the government to introduce at trial evidence of his March 4, 2004, drug sale to an undercover officer one week before his arrest on March 11, 2004, and argues that admitting the evidence made the trial a drug trial instead of a firearm-possession trial. Specifically, Chealy argues that the March 4 drug sale was not inextricably intertwined with the March 11 firearm-possession charge because a week separated the sale from his arrest, there was no evidence of drugs discovered during his arrest, and the only connection between the two events was that he was driving the same car. Chealy further argues that his willingness to stipulate that he had been validly stopped and arrested removed any probative value of the earlier drug sale. Finally, regardless of whether the evidence was inextricably intertwined, Chealy

argues that the evidence should have been excluded under Fed.R.Evid. 403 because the probative value was substantially outweighed by the danger of unfair prejudice or misleading the jury, and the limiting instruction given by the court in this case was not clear enough to remove the prejudice.

We review the district court's rulings on admission of evidence for an abuse of discretion. United States v. Jiminez, 224 F.3d 1243, 1249 (11th Cir. 2000). "The abuse of discretion standard has been described as allowing a range of choice for the district court, so long as that choice does not constitute a clear error of judgment." United States v. Kelly, 888 F.2d 732, 745 (11th Cir. 1989). Put another way, "[we] will only reverse an evidentiary ruling when it has affected a defendant's substantial rights." United States v. Wright, 392 F.3d 1269, 1276 (11th Cir. 2004), cert. denied, 125 S.Ct. 1751 (2005).

Federal Rule of Evidence 404(b) provides that evidence of "other crimes, wrongs, or acts, is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed.R.Evid. 404(b). Thus, extrinsic evidence of uncharged, criminal activities generally is considered inadmissible for proving that the defendant acted the same way in the charged

8

offense, but is admissible if used for another purpose, such as to establish intent.

See id. However,

> [e]vidence of criminal activity other than the charged offense is not extrinsic under Rule 404(b) if it is (1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense.

Wright, 392 F.3d at 1276.

If the evidence is extrinsic and covered under Rule 404(b), it is admissible only if we determine that: "(1) the evidence is relevant to an issue other than defendant's character; (2) there is sufficient proof to enable a jury to find by a preponderance of the evidence that the defendant committed the extrinsic act; and (3) the evidence possesses probative value outweighing any prejudicial effect." United States v. Clemons, 32 F.3d 1504, 1508 (11th Cir. 1994).

The evidence at issue here is testimony from government witnesses regarding the March 4, 2004, drug sale made by Chealy to an undercover police officer, which resulted in the traffic stop and Chealy's arrest one week later on March 11. In United States v. Thomas, relied upon by both parties, a confidential informant purchased crack cocaine from the defendant on two occasions, June 29 and July 8, 1998, and on July 15, an officer engaged in surveillance of the defendant's home observed what he believed to be another drug transaction. 242

9

F.3d 1028, 1030 (11th Cir. 2001). A search warrant was executed two days later, and, while no drugs were found in the residence, firearms were found in the home and in the defendant's truck. Id. The defendant was charged with two counts of possession with intent to distribute crack cocaine based on the June 29 and July 8 transactions, and one count of unlawful possession of firearms by a convicted felon. Id. The defendant in Thomas plead guilty to the drug charges but proceeded to trial on the firearms charge. Like Chealy, the defendant in Thomas moved the court to exclude testimony relating to the drug transactions, and the court denied the motion, finding that the testimony was relevant to prove that the defendant had knowingly possessed the firearms and that the probative value outweighed any prejudice. Id. at 1030-31. The court issued a limiting instruction, stating that the testimony regarding the drug activity could be considered only for the purpose of determining whether "the government is able to establish that these guns were knowingly possessed." Id. at 1031. Also, like Chealy, the defendant in Thomas took the position that the firearms were not his and that he had not been aware of their presence. Id.

This Court, citing with approval cases from the Eighth and Ninth Circuits that hold that possession of illegal drugs or drug paraphernalia is relevant to determining whether a defendant knowingly possessed a firearm, concluded that

10

the district court did not abuse its discretion by permitting testimony regarding the drug transactions because they were "in sufficiently close proximity, temporally and physically, to be relevant to proving that [the defendant] knowingly possessed the weapons." Id. at 1031-32. This Court also noted that the policies underlying Rule 404(b) were inapplicable where "some of the offenses committed as part of a single criminal episode become 'other acts' merely because the defendant is not indicted for all of his actions." Id. at 1032-33. Thus, this Court held that the evidence of the defendant's drug trafficking did not amount to the use of bad character evidence to convict him of being a felon in possession of a firearm "because the two offenses were not 'wholly separate and independent crimes.'" Id. at 1033. Finally, this Court held that the district court did not abuse its discretion by finding that the probative value of the evidence was not substantially outweighed by unfair prejudice. Id.

Chealy cannot distinguish his case from Thomas. Like in Thomas, the drug transactions offered at trial took place one week before Chealy's arrest, which led to a search of his vehicle that revealed a firearm. As Chealy himself points out in his brief, he drove the same vehicle on March 4 that he did on March 11 when he was arrested. Also, like in Thomas, Chealy claimed at the time of his arrest that the gun was not his and that he did not know it was in his vehicle. This Court in

11

Thomas cited with approval an Eighth Circuit case that noted there is a "close and well-known connection between firearms and drugs," and in Chealy's case, the government offered the evidence of the March 4 drug sale to prove that Chealy knowingly possessed the firearm found under the driver's seat of his car. Thomas, 242 F.3d at 1032. Like in Thomas, the evidence here "did not amount to the use of bad character evidence to convict [Chealy] of being a felon in possession of [a firearm]" because the March 4 transaction was not a "wholly separate and independent" crime. Id. at 1033. Thus, the drug sale was inextricably intertwined with the firearm charge.

Moreover, the government, to prove its point that there is a well-known connection between drugs and firearms, offered the expert testimony of Sergeant Loethen, who said that, in his experience, well over 70% of narcotics cases involved firearms in some way. Chealy's wife further testified that, although she purchased the gun, Chealy kept it with him almost all of the time. Without having offered evidence of Chealy's March 4 drug transaction, this testimony would have no relevance at all, and the March 4 drug transaction was the direct reason for Chealy's arrest. Like in Thomas, the evidence of Chealy's drug trafficking "was admitted to prove knowing possession of the firearm[], not character." Thomas, 242 F.3d at 1033. Furthermore, the district court gave an appropriate limiting

12

instruction, and, like in <u>Thomas</u>, the probative value was not substantially outweighed by unfair prejudice.  <u>Id.</u>

To the extent Chealy argues that his offer to stipulate to his arrest removed any probative value from the March 4 drug transaction, his stipulation does not fall under the Supreme Court's ruling in <u>Old Chief v. United States</u>, in which the Supreme Court held that it was an abuse of discretion in a § 922(g) prosecution to spurn a defendant's offer to stipulate to being a convicted felon in favor of admitting the entire record of the defendant's prior conviction, where the name and nature of the prior offense raises the risk of a verdict tainted by improper considerations and the evidence is solely to prove the element of prior conviction. 519 U.S. 172, 174, 117 S.Ct. 644, 647, 136 L.Ed.2d 574 (1997).  In the instant case, Chealy was permitted to stipulate to the prior conviction forming an element of the § 922(g) offense, but his March 4 drug transaction was not the predicate felony relied upon by the government, and the March 4 transaction was offered as proof that Chealy knowingly possessed the firearm, a completely separate element of the offense.  Accordingly, <u>Old Chief</u> is not applicable.

Lastly, to the extent Chealy argues that his firearm-possession trial was overwhelmed by evidence of drug crimes, he has not cited any cases that would warrant a reversal of his conviction, and the trial testimony's references to the

13

March 4 drug crime and evidence linking drugs and firearms were made only because Chealy disputed that he knew the weapon was in the car and that the weapon was his.

We conclude that the district court did not abuse its discretion by admitting evidence of the March 4 drug transaction that eventually led to Chealy's arrest one week later.

### III.  Constitutionality of § 922(g)

Next, Chealy argues that his conviction under § 922(g)(1) violates the Commerce Clause because Congress is not permitted to regulate the purely intrastate possession of a firearm or ammunition absent a showing that such possession substantially affects interstate commerce.  First, Chealy argues that for the statute to be constitutional, the intrastate possession of a firearm by a convicted felon, a non-commercial activity, must substantially affect interstate commerce.  Next, he argues that the statute's jurisdictional element, limiting application to firearms "in or affecting commerce," does not serve to limit the statute's reach to constitutional applications because (1) the term "commerce" is not defined for purposes of § 922(g); (2) other portions of § 922 explicitly limit its reach to "interstate or foreign commerce;" and (3) Congress failed to include a requirement that the possession of a firearm by a convicted felon substantially affects

14

commerce. Finally, applying these principles to his own case, Chealy argues that the government's testimony failed to establish that his possession substantially affected interstate commerce.

We review the constitutionality of a statute de novo. United States v. Ballinger, 395 F.3d 1218, 1225 (11th Cir.) (en banc), cert. denied 126 S.Ct. 368 (2005). Where a defendant challenges the sufficiency of proof that the firearm traveled in interstate commerce, this Court reviews "the evidence to determine whether 'a reasonable jury, viewing the evidence and all reasonable inferences therefrom in the light most favorable to the government could find the defendant[] guilty as charged beyond a reasonable doubt.'" United States v. Clay, 355 F.3d 1281, 1286 (11th Cir. 2004) (citation omitted).

We have consistently upheld the constitutionality of § 922(g). See Wright, 392 F.3d at 1280. Indeed, we have noted that "the phrase 'in or affecting commerce' indicates a Congressional intent to assert its full Commerce Clause power," and that enactment of § 922(g)(1) is not an unconstitutional exercise of congressional power. United States v. Nichols, 124 F.3d 1265, 1266 (11th Cir. 1997); see also United States v. McAllister, 77 F.3d 387, 389-90 (11th Cir. 1996) (holding that § 922(g)(1) is constitutional and stating that the statute "is an attempt to regulate guns that have a connection to interstate commerce; the

15

statute explicitly requires such a connection," and because the government demonstrated that the defendant's firearm previously had traveled in interstate commerce, the statute was constitutional as applied to him). "[O]nly the Supreme Court or this Court sitting en banc can judicially overrule a prior panel decision." Wright, 392 F.3d at 1280.

To the extent Chealy raises an as-applied challenge to § 922(g), we have held that the "in or affecting commerce" language of § 922(g) is a jurisdictional element of the offense that the government is required to prove by demonstrating that the firearm and ammunition possessed by Chealy traveled in interstate commerce. United States v. Clay, 355 F.3d 1281, 1286 (11th Cir. 2004). Thus, the dispositive issue is whether a jury could rationally conclude, based on the evidence, that the firearm and ammunition seized from Chealy was possessed in and affecting interstate commerce. Id. Section 922(g) is not unconstitutional either on its face or as applied to Chealy.

## IV. Prior Convictions and the Sixth Amendment

Lastly, Chealy argues that the district court violated his Sixth Amendment right to a jury by enhancing his sentence under the Armed Career Criminal Act, 18 U.S.C. § 924(e), on the basis of three prior convictions that were not proven to a jury beyond a reasonable doubt, nor admitted by him. While noting that the

prior-conviction exception in <u>Almendarez-Torres v. United States</u>, 523 U.S. 224, 247, 118 S.Ct. 1219, 1232-33, 140 L.Ed.2d 350 (1998), has not been explicitly overruled, Chealy argues that the reasoning of <u>Almendarez-Torres</u> has been "gravely wounded," and that we should not "strain" to make <u>Almendarez-Torres</u> fit the facts of this particular case. Lastly, Chealy argues that <u>Almendarez-Torres</u> does not control because that case was limited to the Fifth Amendment rights to an indictment, due process, and notice, not the Sixth Amendment right to a jury trial.

Where a defendant makes a constitutional challenge to his sentencing enhancements, as did Chealy, we conduct a <u>de novo</u> review, and will conduct a harmless-error review. <u>United States v. Paz</u>, 405 F.3d 946, 948 (11th Cir. 2005); <u>United States v. Mathenia</u>, 409 F.3d 1289, 1291 (11th Cir. 2005). We have held that there are two possible <u>Booker</u> errors, the first being the constitutional error of extra-verdict sentence enhancements in a mandatory guidelines system, and the second being the statutory error of applying the guidelines in a mandatory fashion, even in the absence of a Sixth Amendment violation. <u>Mathenia</u>, 409 F.3d at 1291. For the constitutional error, the burden is on the government to show, beyond a reasonable doubt, that the error did not contribute to the defendant's ultimate sentence. <u>Id.</u> Because the district court applied the Guidelines as advisory, there is no statutory error present in this case.

17

In Almendarez-Torres, the Supreme Court held that the government need not allege in its indictment, and need not prove beyond a reasonable doubt, that a defendant has prior convictions in order for a district court to use those convictions for purposes of enhancing a sentence. 523 U.S. at 247, 118 S.Ct. at 1232-33. Later, in Apprendi, the Supreme Court declined to revisit the reasoning of Almendarez-Torres, holding that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." 530 U.S. at 489-90, 120 S.Ct. at 2362-63. Most recently, in Booker, the Supreme Court held that the mandatory nature of the Federal Sentencing Guidelines rendered them incompatible with the Sixth Amendment's guarantee of a right to a jury trial. 543 U.S. at 232-36, 125 S.Ct. at 749-51. In so doing, the Court re-affirmed its holding in Apprendi: "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." Booker, 543 U.S at 244, 125 S.Ct. at 756.

Post-Booker, we have repeatedly held that nothing in Booker disturbed the Supreme Court's holdings in Almendarez-Torres or Apprendi, and that a district

18

court, therefore, does not err by relying on prior convictions to enhance a defendant's sentence. United States v. Gibson, 434 F.3d 1234, 1246-47 (11th Cir. 2005; United States v. Camacho-Ibarquen, 410 F.3d 1307, 1315-16 (11th Cir.), cert. denied, 126 S.Ct. 457 (2005); United States v. Gallegos-Aguero, 409 F.3d 1274, 1276-77 (11th Cir. 2005); United States v. Orduno-Mireles, 405 F.3d 960, 962-63 (11th Cir.), cert. denied, 126 S.Ct. 223 (2005). We have held that we will continue to follow Almendarez-Torres until the Supreme Court explicitly overrules it. Gibson, 434 F.3d at 1247.

We, therefore, conclude that the district court did not commit constitutional error by sentencing Chealy under § 924(e) based on his prior convictions.

**AFFIRMED.**[2]

---

[2] Chealy's request for oral argument is denied.