[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 3, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-14177
Non-Argument Calendar

_____

D. C. Docket No. 07-20214-CR-CMA

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LUROY JENNINGS,
DARRYL JOHN JENNINGS,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

**(June 3, 2008)**

Before BIRCH, DUBINA and BLACK, Circuit Judges.

PER CURIAM:

Luroy Jennings and Darryl John Jennings appeal their convictions and sentences for aiding and abetting the sex trafficking of a minor for financial benefit, in violation of 18 U.S.C. § 1591(a). The Jennings assert several issues on appeal, which we address in turn. After review, we affirm the Jennings' convictions and sentences.

## I. MOTION TO SUPPRESS

The Jennings were passengers in a car the police stopped in order to investigate whether the car's temporary tag was expired or altered. After the occupants were ordered out of the car, the minor victim, J.B., made statements indicating the Jennings and the driver of the car, codefendant Sammy Carpenter, were holding her against her will, and, accordingly, the three men were arrested. Prior to trial, Carpenter and the Jennings filed motions to suppress physical evidence and statements arising out of the traffic stop, which the district court, following hearings, denied.

The Jennings assert the police lacked probable cause to believe the car's tag was expired and to arrest for a car-registration violation and, accordingly, lacked the authority to conduct a full search of the vehicle. They contend the police failed to employ the least intrusive means necessary to confirm or dispel their concerns regarding the car's temporary tag and engaged in an illegal "fishing expedition"

2

because they lacked reasonable articulable suspicion the occupants of the vehicle had contraband or were armed and dangerous. They assert the police engaged in a "full field-type search" of the car, where they discovered a joint in the ashtray, prior to a conversation about the joint and while the occupants were already in handcuffs. The Jennings also contend the officers' conduct can only be explained as racially motivated, and, because the detectives commenced their investigation based on race, "the entire stop" should have been suppressed pursuant to the Fourteenth Amendment.

We review a district court's denial of a defendant's motion to suppress under a mixed standard of review, reviewing the district court's findings of fact for clear error and its application of law to those facts *de novo*. *United States v. Smith*, 459 F.3d 1276, 1290 (11th Cir. 2006), *cert. denied*, 127 S. Ct. 990 (2007). We accord great deference to district court credibility determinations, *United States v. Clay*, 376 F.3d 1296, 1302 (11th Cir. 2004), and must accept the district court's credibility findings "unless we are left with the definite and firm conviction that a mistake has been committed," *United States v. Chirinos*, 112 F.3d 1089, 1102 (11th Cir. 1997) (quotations omitted).

An officer may conduct a brief investigatory stop of a vehicle "if the seizure is justified by specific articulable facts sufficient to give rise to a reasonable

suspicion of criminal conduct." *United States v. Strickland*, 902 F.2d 937, 940 (11th Cir. 1990). The Supreme Court has held that, once a motor vehicle has been lawfully stopped for a traffic violation, a police officer may order the driver and passengers to exit the vehicle without violating the Fourth Amendment. *Maryland v. Wilson*, 117 S. Ct. 882, 885-86 (1997). Following a stop for the purpose of issuing a traffic citation, the officer may lengthen the detention for further questioning, beyond that related to the initial stop, if the officer has an objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring. *United States v. Pruitt*, 174 F.3d 1215, 1220 (11th Cir. 1999).

"[W]hen the totality of the circumstances indicate that an encounter has become too intrusive to be classified as a brief seizure, the encounter is an arrest and probable cause is required." *United States v. Espinosa-Guerra*, 805 F.2d 1502, 1506 (11th Cir. 1986). In considering whether an investigative detention was sufficiently limited to not ripen into a full-scale, *de facto* arrest unsupported by probable cause, we apply four non-exclusive factors: (1) "the law enforcement purposes served by the detention," (2) the diligence with which the officers pursue the investigation; (3) "the scope and intrusiveness of the detention," and (4) "the duration of the detention." *United States v. Acosta*, 363 F.3d 1141, 1146 (11th Cir. 2004). In examining the law-enforcement purposes, "the most important

4

consideration is whether the police detained the defendant to pursue a method of investigation that was likely to confirm or dispel their suspicions quickly, and with a minimum of interference." *Id.* (quotations omitted). Regarding the scope, intensity, and duration of a detention, we held, in *United States v. Gil*, 204 F.3d 1347, 1350-51 (11th Cir. 2000), that a detention did not ripen into a full arrest, where the stop lasted 75 minutes and Gil was handcuffed and put in the back of a police car while officers searched her house because there was not a female officer present to search Gil, a woman, and the officers did not know if she was armed.

Regarding searches, the "search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment." *United States v. Robinson*, 94 S. Ct. 467, 471 (1973). Likewise, a warrantless inventory search permits a thorough search of property lawfully in police custody, as long as that search is consistent with the police caretaking function. *United States v. O'Bryant*, 775 F.2d 1528, 1534 (11th Cir. 1985).

As an initial matter, the district court appears to have orally denied the Jennings' motion to suppress based on their failure to demonstrate racial profiling and their lack of standing to challenge the admission of certain items because they failed to establish an "ownership interest" in the items. It does not appear the district court explicitly addressed the Jennings' Fourth Amendment challenge to

5

the initial stop and detention. However, it did state, after rejecting the Jennings'

Fourteenth Amendment claims, that it was "satisfied based on what [it] heard and

saw in the Government's recommend[ation] to deny the motion to suppress on all

defendants." Accordingly, in denying the motions to suppress, the district court

appears to have agreed with the Government's reasoning that the initial stop was

proper, the search was conducted incident to lawful arrests, and the Jennings

lacked standing to challenge the search because they did not manifest a subjective

expectation of privacy in the car.[1]

The district court did not err in denying the Jennings' suppression motions.

The decision to stop Carpenter was reasonable because Det. Archer believed that

the out-of-state temporary tag was expired and potentially had been altered, which

would constitute a traffic violation. *See Strickland*, 902 F.2d at 940. Upon

approaching the car, the detectives were permitted to order the occupants out of the

car as a matter of course for officer safety while they investigated the tag issue.

*See Wilson*, 117 S. Ct. at 885-86. Det. Archer testified that, upon being asked

whether there were any weapons in the car, Carpenter stated there was a joint in the

---

[1] The Jennings' argument that a new trial is necessary in light of error under *Brendlin v. California*, 127 S. Ct. 2400, 2403 (2007), is unavailing, as the district court did not deny their motions on the basis of lack of standing to challenge the stop or find the Jennings, as passengers, were not seized under the Fourth Amendment. To the extent the Jennings sought to suppress all items found in the car based on an expectation of privacy in their luggage, the district court did not err in finding they lacked standing on that basis, as they never established any of the items were found in their luggage.

6

ashtray, and this admission provided objectively reasonable and articulable suspicion to extend the detention of the stop. *See Pruitt*, 174 F.3d at 1220. As to the Jennings' claim the car was searched prior to Carpenter's admission of possessing marijuana, the district court appears to have credited Det. Archer's testimony that the officers did not discover the joint until after Carpenter admitted it was in the ashtray, and there is nothing in the record to leave "the definite and firm conviction that a mistake has been committed" in so crediting Det. Archer's testimony. *See Chirinos*, 112 F.3d at 1102.

Regarding the Jennings' argument the scope and duration of the detention were excessive, the totality of the circumstances does not indicate the stop became so intrusive that it became an arrest unsupported by probable cause. *See Espinosa-Guerra*, 805 F.2d at 1506. As to the first factor, the law enforcement purposes served by the detention, an examination of the registration documents and running of the VIN was likely to confirm or dispel the detectives' suspicions. *See Acosta*, 363 F.3d at 1146. The second factor, the diligence with which the officers pursued the investigation, likewise suggests that the stop did not ripen into an arrest, as Det. Archer searched the glove compartment, with Carpenter's consent, and ran the VIN immediately after having the occupants sit on the curb. *See id.* The third factor, the scope and intrusiveness of the detention also suggests the stop did not ripen

7

into an arrest because the detectives only had the occupants exit the car and did not handcuff the Jennings until probable cause for their arrest was established. Finally, as to the fourth factor, the detention only lasted ten minutes, and there was no indication that it was unnecessarily prolonged. *See Gil*, 204 F.3d at 1350-51.

Regarding the searches, according to Det. Archer, the searches were conducted after Carpenter and the Jennings were arrested, first as a general inventory search prior to towing, and second, as a more thorough inventory search at the police station. *See Chirinos*, 112 F.3d at 1102. The evidence demonstrates these searches were properly conducted incident to valid arrests and for inventory purposes. *See Robinson*, 94 S. Ct. at 471; *O'Bryant*, 775 F.2d at 1534.

Likewise, the record demonstrates the Jennings failed to establish racial profiling, violative of the Fourteenth Amendment, and the district court did not err in this determination. Det. Archer testified he had all occupants exit the vehicle, and while he ordered all of them to sit on the curb, he permitted J.B. to stand because she stated that her back hurt. There is no indication he would not have permitted any of the other occupants to stand if they had so requested. Det. Archer also testified J.B. appeared to be "very young" woman. To the extent Det. Archer treated J.B. differently than Carpenter and the Jennings, it was not unreasonable for Det. Archer to believe that adult men presented a greater danger than a "very

8

young" woman, and the Jennings' allegation does not sufficiently demonstrate that Det. Archer's reasonable and limited precautionary measures were based on race. Other than this conclusory allegation, the Jennings have presented no evidence that Det. Archer's stop of the car was based on race.

In summary, the district court did not err in denying the Jennings' motions to suppress because: (1) a detective had reasonable suspicion to investigate what appeared to be an expired or altered out-of-state temporary tag and then had probable cause to arrest the Jennings based on the minor victim's statements on the scene that she was being held against her will; (2) the detention did not ripen into an arrest unsupported by probable cause; (3) the searches of their persons were conducted incident to valid arrests; and (4) the search of the car was conducted for inventorying purposes prior to towing the car.

## II. FED. R. EVID. 404(b)

During the Jennings' trial, Charlene Walton provided Federal Rule of Evidence 404(b) testimony, testifying that Darryl and Luroy had attempted to recruit her into prostitution. The Jennings challenge the admission of Walton's testimony, asserting the only reason the Government introduced Walton's prejudicial testimony was to use it for the impermissible purpose of proving their

9

character, in order to show their actions in the instant case were in conformity therewith.

We review a district court's evidentiary rulings for an abuse of discretion. *United States v. Jiminez*, 224 F.3d 1243, 1249 (11th Cir. 2000). Pursuant to Federal Rule of Evidence 404(b):

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial . . . of the general nature of any such evidence it intends to introduce at trial.

We apply a three-part test to determine whether evidence is admissible under Rule 404(b): "(1) the evidence must be relevant to an issue other than defendant's character; (2) the probative value must not be substantially outweighed by its undue prejudice; and (3) the government must offer sufficient proof so that the jury could find that defendant committed the act." *United States v. Ramirez*, 426 F.3d 1344, 1354 (11th Cir. 2005).

"A defendant who enters a not guilty plea makes intent a material issue which imposes a substantial burden on the government to prove intent, which it may prove by qualifying Rule 404(b) evidence absent affirmative steps by the defendant to remove intent as an issue." *United States v. Zapata*, 139 F.3d 1355,

10

1358 (11th Cir.1998). A "mere presence" defense forces the government to prove a defendant's criminal intent so as to negate any innocent explanation for his presence. *United States v. Delgado*, 56 F.3d 1357, 1365 (11th Cir. 1997). "Where the extrinsic offense is offered to prove intent, its relevance is determined by comparing the defendant's state of mind in perpetrating both the extrinsic and charged offenses." *United States v. Dorsey*, 819 F.2d 1055, 1060 (11th Cir.1987). "Thus, where the state of mind required for the charged and extrinsic offenses is the same, the first prong of the Rule 404(b) test is satisfied." *United States v. Edouard*, 485 F.3d 1324, 1345 (11th Cir. 2007). Finally, the risk of undue prejudice can be reduced by a district court's limiting instruction. *United States v. Ramirez*, 426 F.3d 1344, 1354 (11th Cir. 2005).

The district court did not abuse its discretion in admitting Walton's testimony as evidence of the Jennings' intent. Regarding the first prong of the Rule 404(b) test, intent was at issue, as the Jennings pled not guilty and asserted that, while they were knowledgeable of Carpenter's actions, they were merely present. *See Zapata*, 139 F.3d at 1358; *Delgado*, 56 F.3d at 1365. The uncharged extrinsic offenses included Darryl's enticement or coercion of Walton into prostitution, and Luroy's potential attempt to entice Walton into prostitution, and the charged conduct consisted of the Jennings' aiding and abetting the recruiting,

11

enticing, or harboring of a person, knowing the person is a minor who will be caused to engage in a commercial sex act, and receiving something of value for participation in the venture. *See* 18 U.S.C. § 1591. Although the elements of the charges that could have been brought for the extrinsic offenses and the elements of the charged offenses are not identical, the offenses are sufficiently analogous and require a sufficiently similar state of mind, *i.e.*, the intent to have women commit commercial sex acts, so as to satisfy the first prong of the Rule 404(b) test. *See Edouard*, 485 F.3d at 1345; *Dorsey*, 819 F.2d at 1059.

Similarly, the second prong was met because the Jennings' defense was based on their assertion they were merely present. Thus, Walton's testimony Darryl had acted as her pimp and Luroy had stated he was a pimp and would act as her pimp in the months prior to the instant offenses was highly probative of the Jennings' intent to aid and abet in the harboring of J.B. knowing she would engage in commercial sex acts for their profit. *See Delgado*, 56 F.3d at 1365. Moreover, contrary to the Jennings' argument, the fact the jury requested the district court to repeat its limiting instruction demonstrates the jury was aware Walton's testimony could be used only for limited purposes. This limiting instruction, which was read prior to Walton's testimony, was emphasized by Darryl in his closing argument, and was included in the jury instructions, reduced the risk of undue prejudice. *See*

12

*Ramirez*, 426 F.3d 1354.  Finally, the third prong of the Rule 404(b) test was met because: (1) Walton testified to the events and conversations with Darryl and Luroy; (2) Walton's testimony was unrebutted; and (3) the jury could credit her testimony, which would sufficiently establish the conduct.

## III.  SUFFICIENCY OF THE EVIDENCE

The Jennings further contend there was insufficient evidence for conviction because the evidence demonstrated, at most, their mere presence with Carpenter and the minor victim.  They assert there was insufficient evidence to show they: (1) aided and abetted in enticing, recruiting, harboring, or transporting J.B. to Florida for purposes of prostitution; (2) aided and abetted J.B.'s participation in a commercial sex act; (3) associated in any venture; (4) received any financial benefit from the venture; or (4) knew that J.B. was a minor.[2]

We review the district court's denial of a motion for a judgment of acquittal *de novo*, viewing the facts and drawing all inferences in the light most favorable to the government.  *United States v. Descent*, 292 F.3d 703, 706 (11th Cir. 2002).  We

_____

[2] Luroy argue for the first time on appeal that the Government did not prove he knowingly transported J.B. in interstate commerce.  Arguments not raised in the district court are reviewed for plain error.  *United States v. Raad*, 406 F.3d 1322, 1323 (11th Cir. 2005).  An error cannot be plain unless it is clear under current law.  *United States v. Aguillard*, 217 F.3d 1319, 1321 (11th Cir. 2000).   Regarding the interstate commerce element, we have rejected an appellant's request to construe § 1591(a) as requiring knowledge by a defendant that his actions were in or affecting interstate commerce.  *United States v. Evans*, 476 F.3d 1176, 1180 n.2 (11th Cir.) *cert. denied*, 128 S. Ct. 193 (2007).  Thus, the district court could not have committed plain error.

13

accept "all reasonable inferences and credibility choices made in the government's favor, to determine whether a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." *United States v. Calhoon*, 97 F.3d 518, 523 (11th Cir. 1996).

The statute at issue provides punishment for:

> (a) Whoever knowingly—
>
> > (1)    in or affecting interstate or foreign commerce . . . recruits, entices, harbors, transports, provides, or obtains by any means a person; or
> >
> > (2)    benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),
>
> knowing . . . that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act . . . .

18 U.S.C. § 1591(a). Pursuant to 18 U.S.C. § 2, whoever aids or abets the commission of an offense against the United States is punishable as a principal. To sustain a conviction for aiding and abetting, the evidence must show the Jennings shared the criminal intent of Carpenter and committed an overt act in furtherance of the criminal venture. *See United States v. Leonard*, 138 F.3d 906, 909 (11th Cir. 1998).

14

The jury could infer Luroy knew J.B. was a minor from J.B.'s testimony that Luroy stated he had a partner who had been arrested "for messing with a youngster that was 15, 16," after J.B. and Carpenter discussed changing her birth date so she could get into clubs and buy cigarettes. The jury likewise could infer Darryl knew J.B. was a minor from J.B.'s testimony that Carpenter told Darryl she was 16 years old, after which Darryl stated he had "a partner who went to jail for doing it with youngsters."

A closer question is presented by the Jennings' challenge to the sufficiency of the evidence proving they committed an overt act to aid and abet the harboring of J.B. in the motel rooms. Although the Jennings did not procure or pay for the motel rooms, the jury could infer the Jennings were indeed "pimp partners" in the general venture of prostituting J.B., based on J.B.'s testimony that: (1) the Jennings would look at her as she walked Orange Blossom Trail, (2) Carpenter stated the Jennings were "pimp partners" whom she would have to support through prostitution because they all were broke, (3) if she were to have stated to Carpenter or the Jennings she was leaving, there "would have been an argument about if [she] was going to stay or not," and (4) she did not think she could have left because Carpenter or the Jennings "would have been right there." Accordingly, the jury could infer that, as part of the venture (1) the Jennings' sleeping in the same motel

15

rooms as Carpenter and J.B., and (2) the Jennings' apparent guarding of J.B.'s ability to leave the motel room, constituted overt acts that aided and abetted Carpenter's harboring of J.B.

As to Count Two, the jury could infer the Jennings benefitted financially from their participation in the venture based on J.B.'s uncontradicted testimony that: (1) she saw Carpenter pay for gas; (2) she never saw the Jennings pay for anything; (3) Carpenter stated he was broke shortly after receiving and spending $250 from J.B. and $50 from Diamond; and (4) Carpenter stated her "role in the family" was to get him and his partners money through prostitution. Thus, there was sufficient evidence for the jury to infer the Jennings benefitted from the gas used to drive to South Beach and Fort Lauderdale and Carpenter's renting of the room at the Red Roof Inn, which were paid for, at least in part, by J.B.'s commercial sex acts.

## IV. CUMULATIVE ERROR

Luroy argues his "mere presence was certainly tipped towards conviction" by an accumulation of errors. "The cumulative error doctrine provides that an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal." *United States v. Baker*, 432 F.3d 1189, 1223 (11th Cir.

16

2005) (quotations omitted). However, because Luroy has not demonstrated any reversible error in his trial, the cumulative error doctrine does not apply.

## V. U.S.S.G. § 2G1.3(b)(1)(B)

Luroy argues a two-level increase for J.B. being in his custody, care, or supervisory control was inappropriate because, according to the commentary, § 2G1.3(b)(1)(B) applies only to individuals like "teachers, day care providers, baby-sitters, or other temporary caretakers," and the record contains no evidence that he: (1) exercised, or was in a position to exercise, any custody, care, or control over J.B.; or (2) interacted with J.B. at the level of a teacher, day care provider, or baby-sitter. Darryl argues there was an insufficient factual basis for the increase because J.B. was not "entrusted" to his or Carpenter's care, and J.B. made her own decision to travel to Florida.

We review a district court's interpretation of the Guidelines *de novo*, and its factual findings for clear error. *United States v. Jordi*, 418 F.3d 1212, 1214 (11th Cir. 2005). A two-level increase is applicable "[i]f (A) the defendant was a parent, relative, or legal guardian of the minor; or (B) the minor was otherwise in the custody, care, or supervisory control of the defendant." U.S.S.G. § 2G1.3(b)(1). The application note to the subsection states that (b)(1):

> is intended to have broad application and includes offenses involving
> a victim less than 18 years of age entrusted to the defendant, whether

17

> temporarily or permanently. For example, teachers, day care providers, baby-sitters, or other temporary caretakers are among those who would be subject to this enhancement. In determining whether to apply this enhancement, the court should look to the actual relationship that existed between the defendant and the minor and not simply to the legal status of the defendant-minor relationship.

*Id.*, comment. (n.2(A)).

As to Darryl's argument that J.B. was not entrusted into Carpenter's care, J.B. testified she stated to Carpenter she would have to talk to her mother before going to Miami, and her mother apparently assented, as she did not prevent J.B. from going. Accordingly, J.B. was entrusted into Carpenter's care. Moreover, the guideline and commentary language do not exclude a minor's entrustment of herself to a defendant. *See* U.S.S.G. § 2G1.3(b)(1)(B), comment. (n.2(A)). The commentary states the provision is to have broad application, and it precedes "temporary caretakers" with the qualifier "other"–not "other similar"–cutting against Luroy's argument that "other temporary caretakers" was limited by the terms preceding it. *See id.* The evidence was sufficient to demonstrate the Jennings directly oversaw J.B. and slept in the motel room with her, and, as aiders and abettors of the prostitution venture, were partially responsible for J.B.'s custody and supervisory control. Accordingly, the district court did not err in applying the increase.

18

# VI. MINOR ROLE

Finally, Luroy contends he should have received a minor-role reduction because his involvement with the relevant conduct was, at best, minimal. He contends the failure to apply the reduction is contrary to one of the Sentencing Guidelines' primary objectives, *i.e.*, to impose comparable sentences for similar acts, because his conduct was substantially less than Darryl's, but he received the same sentence.

A court's finding regarding a defendant's role in the offense is reviewed for clear error. *United States v. De Varon*, 175 F.3d 930, 937 (11th Cir. 1999) (en banc). The proponent of the reduction always bears the burden of proving a mitigating role in the offense by a preponderance of the evidence. *Id.* at 939. A defendant may receive a two-level reduction in his base offense level where his role in the offense was minor. U.S.S.G. § 3B1.2(b). The district court's ultimate determination of the defendant's role in the offense should be informed by: (1) the defendant's role in the relevant conduct for which he has been held accountable for at sentencing; and (2) his role as compared to that of other participants in his relevant conduct. *De Varon*, 175 F.3d at 940.

Luroy was held accountable for the offense that he was directly involved in, *i.e.*, his aiding and abetting the harboring of J.B. The district court rejected his

argument of mere presence, finding the jury verdict supported his participation in the venture. Moreover, Luroy's role in aiding and abetting the venture was essentially the same as Darryl's as they both stayed in the motel rooms with J.B. and Carpenter and monitored J.B. as she was in the room and walked the Orange Blossom Trail. Thus, his role in the offense for which he was held accountable was comparable to Darryl's role. *See De Varon*, 175 F.3d at 940. Accordingly, the district court did not err in denying Luroy a minor-role reduction.

**AFFIRMED.**