United States Court of Appeals,

Eleventh Circuit.

No. 94-2963.

UNITED STATES of America, Plaintiff-Appellant,

v.

Charles HOLLOWAY; Donna Holloway, Defendants-Appellees.

Feb. 6, 1996.

Appeal from the United States District Court for the Middle District of Florida. (No. 92-263-CR-T-23A), Steven D. Merryday, Judge.

Before HATCHETT and BIRCH, Circuit Judges, and GODBOLD, Senior Circuit Judge.

HATCHETT, Circuit Judge:

In this criminal appeal, the district court dismissed an indictment because an assistant United States Attorney, at the taking of depositions in a civil matter, assured the appellees that no criminal prosecutions would be brought against them. We affirm.

FACTS

On March 8, 1991, the Pasco County Sheriff's Office, the United States Customs Service (Customs Service), and the United States Internal Revenue Service (IRS), pursuant to a lawful search warrant, searched a residence in Brooksville, Florida, and seized cocaine, marijuana residue, and numerous firearms. Charles and Donna Holloway, owners of the residence, were present during the search. No arrests were made on that day. On March 21, 1991, the United States Attorney for the district filed a forfeiture action against the Holloways. The complaint alleged that two parcels of property which the Holloways owned were used, or intended to be used, to commit or facilitate the distribution of narcotics in

violation of 21 U.S.C. §§ 841 and 846.

On April 9, 1991, the Hernando County State Attorney's Office (the state) filed criminal charges against the Holloways. In June 1991, the state, at the request of the United States Attorney, dismissed its case against the Holloways to allow for a federal criminal prosecution. On April 3, 1991, the United States Attorney instituted a federal grand jury investigation into the Holloways' alleged violation of narcotics, firearms, and tax laws. Customs Service Special Agent Ty Arnold and a special agent from the IRS were assigned to handle the civil and criminal investigations. In January 1992, Agent Arnold was reassigned, and Agent Jeffrey Crane succeeded him.

On March 3, 1992, approximately one year after the execution of the search warrant, the assistant United States attorney (the AUSA) assigned to the civil forfeiture case served the Holloways with written interrogatories. On March 16, 1992, the AUSA filed a motion for summary judgment in that case. Attached to the summary judgment motion was an affidavit from Agent Crane that detailed evidence that the Holloways were involved in the distribution of marijuana and cocaine and that the seized premises were used to facilitate the illegal activities. On April 15, 1992, the Holloways answered the complaint and returned the written interrogatories to the government. Two weeks later, on April 29, 1992, the Holloways, with their attorney, Dominic Baccarella, appeared at the United States Attorney's Office to be deposed on matters concerning the civil forfeiture case. When the Holloways and Baccarella arrived, the AUSA, a court reporter, and Agent Crane

were seated in the conference room. Baccarella, who was aware that Agent Crane was investigating the Holloways' alleged criminal activity, was surprised by Agent Crane's presence at the deposition. Baccarella asked the AUSA why Crane was present, and the AUSA explained that Agent Crane was assisting her in the government's civil forfeiture case. Baccarella threatened to abort the deposition proceeding and leave with his clients. In response to Baccarella's threatened action, the AUSA requested that Baccarella accompany her to the hallway, outside the presence of the Holloways, the court reporter, and Agent Crane. When Baccarella and the AUSA returned to the room, Agent Crane asked the AUSA whether he could remain at the deposition; the AUSA told Agent Crane that he could remain. The AUSA also permitted Charles and Donna Holloway to be deposed in the presence of each other. In addition to providing testimony, the Holloways turned over personal records at the deposition session.[*] Thereafter, the government used the deposition testimony and personal records to obtain an indictment against the Holloways.

PROCEDURAL HISTORY

On September 8, 1992, a federal grand jury in the Middle District of Florida indicted the Holloways (hereinafter "appellees") on a five-count indictment for federal narcotics and firearm violations. The indictment charged the appellees with: Count I, conspiring to possess with intent to distribute cocaine and marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846;

_____

[*]Approximately one month later, the Holloways terminated Baccarella as their counsel.

Count II, possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; Count III, possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; and Counts IV and V, possessing a firearm while being a convicted felon in violation of 18 U.S.C. § 922(g). The indictment also sought the forfeiture of the real property that was the subject of the civil forfeiture action. On October 6, 1992, the grand jury returned a superseding indictment adding three additional counts to the original indictment. Counts VI, VII, and VIII each charged the appellees with filing false income tax returns in violation of 26 U.S.C. § 7206(1).

On September 29, 1992, appellees filed a motion to suppress evidence. On February 25, 1993, a magistrate judge, after conducting an evidentiary hearing, recommended that appellees' motion be denied. The district court adopted the magistrate judge's recommendation. On December 27, 1993, appellees filed a joint motion to dismiss the superseding indictment, asserting for the first time that they had been promised immunity from prosecution on the day of their depositions. On January 4, 1994, the United States Attorney filed a response denying appellees' allegations. In February 1994, the district court held a nine-day evidentiary hearing on appellees' motion.

On July 13, 1994, the district court issued an order dismissing the superseding indictment. The court found that on April 29, 1992, the AUSA assured Baccarella while in the hallway that no criminal prosecution would be brought. Because of the

AUSA's assurances to Baccarella, the district court concluded that the appellees were entitled to "use" immunity. Based on this determination, the district court dismissed the indictment and permanently enjoined the government from using any testimonial or documentary evidence obtained at the deposition or derived therefrom in any future criminal prosecution. The government filed this appeal.

## CONTENTIONS

The government contends that the district court clearly erred in determining that the AUSA assured appellees through their counsel that they would not be criminally prosecuted. In the alternative, the government argues that it was improper for the district court to dismiss the indictment because the court made no finding of flagrant abuse or misconduct.

In response, appellees assert that they presented sufficient evidence that the AUSA promised their counsel that no prosecution was forthcoming, and the district court correctly found that the appellees relied on this promise to their detriment. Appellees also assert that the government's conduct was sufficiently egregious to warrant dismissal of the indictments.

## ISSUES

On appeal, we address the following issues: (1) whether the district court clearly erred in determining that the government assured appellees through their counsel that they would not be criminally prosecuted; and (2) whether the district court abused its discretion in dismissing the grand jury indictment without prejudice.

DISCUSSION

A. The district court's factual determination

The district court determined that the government, prior to the appellees' production of documents, assured appellees that it would not seek a criminal prosecution. We review the district court's factual findings for clear error. *Anderson v. Bessemer City,* 470 U.S. 564, 573-74, 105 S.Ct. 1504, 1511-12, 84 L.Ed.2d 518 (1985). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as trier of fact, it would have weighed the evidence differently." *Anderson,* 470 U.S. at 565, 105 S.Ct. at 1507.

The government argues that the district court clearly erred in finding that the AUSA assured the appellees through their counsel, Baccarella, that no prosecution was forthcoming. Specifically, the government disputes the district court's factual findings with respect to the sequence of events at the appellees' deposition and the content of the AUSA's conversation with Baccarella. At the evidentiary hearing, the AUSA testified that shortly before the deposition began Baccarella threatened to cancel the deposition because she requested that the appellees be deposed outside each other's presence. In an attempt to prevent Baccarella from leaving, the AUSA testified that she requested that Baccarella join her in the hallway to discuss whether both appellees could remain in the conference room. The AUSA also testified that while in the hallway with Baccarella, Baccarella asked about the status of the criminal investigation regarding the appellees, at which time she

replied, "I don't know."

Baccarella testified that the discussion regarding whether the appellees could be deposed in each other's presence occurred after he returned from the hallway with the AUSA and that Agent Crane's presence prompted his threatened action. Baccarella also testified that when he and the AUSA went out into the hallway, he stated, "I'm here for a civil case ... I'll be damned if I'm going to let my clients testify to anything that you might want to get into that's criminal." He testified that the AUSA replied, "[W]e're not going anywhere criminally with this thing ... this is a civil case and I want to take their deposition and [Agent Crane is] only here to help me."

The district court credited Baccarella's testimony, and we must rely on the district court's credibility determinations. *See Amadeo v. Zant,* 486 U.S. 214, 223, 108 S.Ct. 1771, 1777, 100 L.Ed.2d 249 (1988) (a federal appellate court "must give due regard ... to the opportunity of the trial court to judge [ ] the credibility of witnesses"). Because the determination of whether the AUSA assured Baccarella that no criminal prosecution would ensue is a factual one, we must affirm the district court unless we are left with "the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). The following facts are undisputed: Baccarella questioned the presence of Agent Crane immediately upon entering the conference room. At that time, Baccarella knew that Agent Crane was investigating the alleged criminal conduct of the appellees. Baccarella subsequently

threatened to leave with the appellees. As a result of Baccarella's threatened action, the AUSA requested Baccarella to accompany her to the hallway. When Baccarella and the AUSA returned from the hallway, Agent Crane asked whether he could remain at the deposition. The AUSA told Agent Crane that he could remain. A short time later, the appellees were deposed.

We find that Agent Crane's question concerning his presence at the deposition supports the district court's finding that Baccarella, prior to going into the hallway with the AUSA, was adamant that he and the appellees would not proceed with the deposition because of Crane's presence. Because the appellees did proceed with the deposition, it is plausible that (1) the AUSA assured Baccarella that no criminal prosecution would be brought, (2) this assurance was communicated to the appellees, and (3) the appellees relied on this assurance when they testified and produced documents at the deposition. Where two permissible views of the evidence exist, "the factfinder's choice between them cannot be clearly erroneous." *Anderson,* 470 U.S. at 574, 105 S.Ct. at 1511.

The government argues that the district court's finding is implausible when viewed in light of the following. First, the written interrogatories appellees served after the alleged assurance was made indicate that Baccarella expected that an indictment was forthcoming. Second, Baccarella never memorialized the government's assurance that no prosecution would be forthcoming. Finally, the appellees waited over fifteen months after their original indictment to seek enforcement of this alleged assurance. We are puzzled that appellees after being promised that

they would not be criminally prosecuted would wait fifteen months after the indictment before seeking a dismissal of the indictment on this basis. We, however, cannot conclude based on the above facts that the district court's finding constitutes clear error.

B. District court's dismissal of the indictment

Because sufficient evidence supports the district court's factual findings, we now address whether the district court properly dismissed the grand jury indictment. The government argues that the district court improperly dismissed the indictment because the court made no findings of flagrant abuse or egregious prosecutorial misconduct. We find no merit to this argument. "Federal courts possess the power and duty to dismiss federal indictments obtained in violation of the Constitution or laws of the United States." *United States v. Pabian,* 704 F.2d 1533, 1536 (11th Cir.1983). The Fifth Amendment provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The Fifth Amendment's privilege against compulsory self-incrimination may be invoked "when acting as a witness in any investigation, to give testimony which might tend to show that [the witness] had committed a crime." *Counselman v. Hitchcock,* 142 U.S. 547, 562, 12 S.Ct. 195, 198, 35 L.Ed. 1110 (1892). "Its sole concern is to afford protection against being "forced to give testimony leading to the infliction of penalties affixed to ... criminal acts.' " *Kastigar v. United States,* 406 U.S. 441, 453, 92 S.Ct. 1653, 1661, 32 L.Ed.2d 212 (1972) (quoting *Ullmann v. United States,* 350 U.S. 422, 438-39, 76 S.Ct. 497, 507, 100 L.Ed. 511 (1956)). In accordance with the Fifth Amendment's

privilege against self-incrimination which prohibits prosecutorial authorities from using compelled testimony in any respect, we affirm the district court's dismissal of the grand jury indictment. *See Kastigar,* 406 U.S. at 453, 92 S.Ct. at 1661.

CONCLUSION

For the reasons stated in this opinion, the district court is affirmed.

AFFIRMED.