[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-11356
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 17, 2012
JOHN LEY
CLERK

D.C. Docket Nos. 1:07-cv-02826-ODE,
1:03-cr-00493-ODE-AJB-24

RAMON ALVAREZ-SANCHEZ,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(January 17, 2012)

Before TJOFLAT, EDMONDSON and FAY, Circuit Judges.

PER CURIAM:

Ramon Alvarez-Sanchez ("Sanchez"), a federal prisoner proceeding *pro se*,

appeals the district court's denial of his motion to vacate, set aside, or correct

sentence, filed under 28 U.S.C. § 2255.  For the reasons stated below, we affirm.

I.

In January 2005, pursuant to a plea agreement, Sanchez pleaded guilty to conspiring to possess with intent to distribute illegal drugs (Count 1) and possessing a firearm in furtherance of a drug trafficking crime (Count 23).  The district court sentenced Sanchez to 327 months' imprisonment on Count 1, to be followed by a mandatory, consecutive term of 5 years on Count 23, resulting in a total sentence of 387 months.  Among the claims filed in his § 2255 motion, Sanchez alleged that his trial counsel, Patrick Deering, rendered ineffective assistance by failing to inform him that the government had offered a more favorable plea agreement than the one he eventually signed.  To support his claim, Sanchez produced a letter from the government to Deering, dated November 23, 2004, offering a plea deal, pursuant to which Sanchez would plead guilty only to Count 1 of the indictment, thereby avoiding the consecutive five-year sentence on the firearm charge.

The district court denied Sanchez's § 2255 motion.  On appeal, we vacated the district court's judgment and remanded for an evidentiary hearing to determine whether Deering had communicated the November 2004 plea offer to Sanchez and whether Sanchez would have accepted that offer.  *Alvarez-Sanchez v. United*

2

*States*, 350 Fed. App'x 421, 425 (11th Cir. 2009). We stated that Deering's failure to communicate the offer would constitute deficient performance under *Strickland v. Washington*,[1] and, if Sanchez would have accepted the offer, he would satisfy *Strickland*'s prejudice prong. *Id.*

At the evidentiary hearing, Sanchez, who was represented by a new counsel, called Deering as a witness. Deering testified that, sometime in October 2004, he met with the Assistant U.S. Attorney ("AUSA") to discuss Sanchez's case, and the AUSA verbally gave Deering a preliminary plea offer, promising to send Deering a letter about the offer. Before receiving anything in writing, Deering visited Sanchez and talked to him about the offer. When, on November 23, 2004, Deering finally received the letter concerning the plea offer, he forwarded it to Sanchez. Afterwards, Deering talked to Sanchez in detail about the government's letter and the accompanying proposed plea agreement. Deering stated that the government's letter and the proposed plea agreement reflected the same plea offer that Deering had initially discussed with the AUSA. He explained that Sanchez refused to accept the plea offer for two main reasons. First, Sanchez wanted an assurance

---

[1] *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In *Strickland*, the Supreme Court held that a defendant seeking to overturn a conviction based on ineffective assistance of counsel at trial must establish two elements: first, the defendant must show that counsel's performance was deficient, and second, he must show that the deficient performance prejudiced him. *Id.* at 687, 104 S.Ct. at 2064.

from the government that several of his family members would not be prosecuted, and the government would not provide such an assurance. Second, Sanchez felt that the proposed plea agreement would result in an overly long prison sentence under the Sentencing Guidelines.

Deering additionally testified that, during the relevant times, he visited Sanchez at the federal penitentiary in Atlanta. As part of the visitation procedures, Deering had to send a fax to the prison requesting the visit and, upon arrival, had to sign a log sheet. At this point in the hearing, Deering was shown several letters that he had faxed to the prison, expressing his intent to visit Sanchez on December 9th and 16th of 2004. Deering stated that he visited Sanchez perhaps 20 times while representing him, but could not recall any specific visits, including the visits on December 9th and 16th. When confronted with the visitor log sheets from the Atlanta penitentiary, which did not list Deering's name on December 9th or 16th, Deering asserted that, regardless of what the log sheets contained, he did visit Sanchez in December.

After Deering testified, Sanchez himself took the stand. He acknowledged that Deering visited him in October and early November to discuss a possible plea to Count 1 of the indictment. He maintained, however, that he had never received the government's November 2004 letter concerning the proposed plea agreement.

4

The first time that he saw the document was in 2006, when he received his file from his appellate lawyer. Sanchez testified that, if he had seen the November 2004 proposed plea agreement, he would have accepted it because that agreement did not include the weapons charge and because he wanted to plead guilty and had always accepted responsibility. Sanchez did not recall Deering visiting him in December 2004, but did recall that Deering saw him in January 2005, a few days before he actually pleaded guilty.

After a continuance, Sanchez called to the stand Ralph Hodge, an official from the Atlanta penitentiary. Hodge testified, in relevant part, that if an attorney faxed him a letter requesting a visit but the attorney's name did not appear in the logbook, it was "more likely" that the attorney did not come. Hodge also testified that if someone does not sign the logbook, they would not get into the penitentiary.

During the hearing, the government introduced several exhibits, including Deering's notes from his meetings with Sanchez on October 8th, November 3rd, and November 16th of 2004. According to Deering's notes from October 8th, Sanchez wanted to plead guilty to Count 1, but he would not cooperate with the government, and he wanted a deal for his family. Notes from the other two meetings also mentioned a possible plea agreement.

Sanchez's exhibits included a letter that he had written to the district court, dated November 16, 2004. In the letter, Sanchez stated that he intends to plead guilty and to accept "full responsibility for the money found in my home, and also exclusively for the accusation of my sole crime." He also asked the court not to allow the government to convict him of crimes that he had never committed, and he begged the court for the release of his wife, who, he emphasized, was innocent of any wrongdoing. In addition to the letter, Sanchez submitted the written plea offer that the government sent to Deering on November 23, 2004, along with a proposed plea agreement. Pursuant to the agreement, Sanchez would plead guilty to Count 1 of the indictment, but there was no limit on the amount of drugs attributable to him or the length of his potential sentence. Sanchez further produced a cover letter addressed to him from Deering's office, dated November 24, 2004, which stated: "Enclosed are documents from the Assistant U.S. Attorney, regarding a draft plea agreement." Finally, Sanchez included among his exhibits the aforementioned visit notifications that Deering had faxed to the Atlanta penitentiary in December 2004, as well as the log sheets from the penitentiary.

After the hearing concluded, the district court issued an order denying Sanchez's ineffective-assistance claim. The district court found, among other

things, that Deering had sent the November 2004 written plea offer to Sanchez, that Sanchez had received it, and that the written offer was the same as that which Deering had previously discussed with him. The district court expressly credited Deering's testimony that he had visited Sanchez in December 2004 and had discussed the plea offer, but the court acknowledged that it was not clear why Deering's signature did not appear on the prison log sheets. The court found that, even if Deering did not visit Sanchez in December, Deering had discussed the plea offer with Sanchez on prior occasions and knew what Sanchez wanted from a plea agreement. The district court also credited Deering's testimony regarding Sanchez's reasons for rejecting the first plea offer. The court concluded that Sanchez had failed to establish both the deficiency and prejudice prongs of *Strickland*.

The district court granted a certificate of appealability ("COA") on the issue of whether Deering "provided effective assistance of counsel with respect to the November 2004 plea offer."

## II.

On appeal, Sanchez argues that the district court erroneously failed to weigh

his testimony and to make proper credibility determinations.[2]  He also contends

that, in light of the evidence presented at the hearing, he has established that his

counsel performed deficiently and that he suffered prejudice as a result.

In an appeal challenging a § 2255 ruling, we review legal issues *de novo*

and factual findings for clear error.  *Murphy v. United States*, 634 F.3d 1303, 1306

(11th Cir. 2011).  Under the clear error standard, we must affirm a district court's

findings of fact unless the record lacks substantial evidence to support them.  *San*

*Martin v. McNeil*, 633 F.3d 1257, 1265 (11th Cir.), *cert. denied* (U.S. Oct. 3,

2011) (No. 10-10678).  We will give even greater deference to fact findings of the

district court that are based on determinations of witness credibility.  *Stano v.*

*Butterworth*, 51 F.3d 942, 944 (11th Cir. 1995).

## A.

To support his argument regarding credibility, Sanchez relies on our

decision in *Gallego v. United States*, 174 F.3d 1196 (11th Cir. 1999).  In that case,

---

[2]  In his brief, Sanchez requests a COA on the credibility issue.  However, the district court already issued a broad COA, allowing Sanchez to appeal the denial of his ineffective-assistance claim.  While the COA does not specifically mention the court's credibility findings, those findings form an inextricable procedural part of the question on appeal, and, therefore, we do not need to grant an additional COA.  *See Murray v. United States*, 145 F.3d 1249, 1251 (11th Cir.1998) ("Although we will not decide any issue not specified in the COA, we will construe the issue specification in light of the pleadings and other parts of the record."); *see also McCoy v. United States*, 266 F.3d 1245, 1248 n.2 (11th Cir. 2001) (reading a COA to encompass those "procedural issues which must be resolved before this Court can reach the merits" of the underlying claim).

a magistrate judge had denied a prisoner's ineffective-assistance claim on the ground that, during the evidentiary hearing, the prisoner failed to present evidence supporting his testimony. *Gallego*, 174 F.3d at 1197-98. On appeal, we reversed the magistrate's decision and held that the "fact that defendant's testimony is uncorroborated is not enough standing alone to support a credibility finding." *Id.* at 1198. We observed that a district court may well find a defendant to be not credible, but here the magistrate failed to make any credibility findings or to explain why counsel was the more credible witness, and nothing in the magistrate's report indicated that the magistrate weighed the defendant's credibility. *Id.*

Sanchez's reliance on *Gallego* is misplaced. Unlike in *Gallego*, the district court in this case did not deny Sanchez's claim on the ground that he failed to present evidence corroborating his testimony. As described above, both parties presented exhibits to support their respective testimonies, and the district court considered this evidence. Moreover, while the court did not specifically address Sanchez's credibility, the court expressly found Deering to be credible, and its factual findings were consistent with Deering's testimony, which directly implies that Sanchez's contrary testimony was not credible. Thus, the court properly weighed Sanchez's testimony, and there is no cause for a remand. *See United*

9

*States v. $242,484.00*, 389 F.3d 1149, 1154-55 (11th Cir. 2004) (*en banc*) (stating that, if a district court fails to expressly decide a factual issue that matters to the judgment, this Court may infer that the district court "implicitly resolved that factual issue in a way consistent with the judgment"); *see also Tejada v. Dugger*, 941 F.2d 1551, 1563 (11th Cir. 1991) ("When it appears that a trial court would have granted the relief sought if it had believed the defendant's testimony, then its failure to grant relief was tantamount to an express finding against the credibility of the defendant." (quotation omitted)).

B.

With regard to the deficiency prong of *Strickland*, evidence supports the district court's finding that Deering had conveyed to Sanchez the government's first plea offer. Deering testified that he had discussed with Sanchez the essential terms of the government's offer before receiving the written offer in November 2004; that he had sent the written offer to Sanchez and reviewed it with him; and that Sanchez refused to accept the plea offer because it would have provided no protection for his family and would have resulted in an excessive sentence. As stated above, the district court could, and did, find Deering to be credible. *See Stano*, 51 F.3d at 944. Several exhibits supported Deering's testimony. His notes indicated that he met with Sanchez three times in October and November to

10

discuss a possible plea deal and that Sanchez, while desiring to plead guilty to Count 1, also wanted a deal for his family. Moreover, the cover letter from Deering's office, dated November 24, 2004, indicated that Deering had sent to Sanchez the government's first written plea offer and the accompanying proposed plea agreement.

The letter that Sanchez sent to the court on November 16, 2004, and the prison log sheets, coupled with Hodge's testimony, do not undermine the district court's findings. The November 16th letter shows that Sanchez wanted to plead guilty, but it also indicates that he wanted to limit the extent of his culpability and sought the release of his wife. Because the government's first plea offer placed no limits on Sanchez's potential sentence and provided no protection to his family members, Sanchez's letter is consistent with Deering's explanation as to why Sanchez refused to accept the offer.

As to the prison log sheets and the accompanying testimony of Hodge, this evidence is not entirely conclusive as to whether Deering had actually visited Sanchez in December 2004. Among the exhibits were several notifications that Deering had faxed to the Atlanta penitentiary, expressing his intent to visit Sanchez on December 9th and 16th, and one could reasonably conclude that Deering had not twice notified the prison of his visit but failed to appear both

11

times. Moreover, while Hodge testified that a person would not be able to visit the penitentiary without signing the log sheet, he also testified that, if someone sent a fax notification but his name did not appear in the log sheet, "more likely" that person did not come. This still leaves open a possibility that Deering visited Sanchez in December without signing the log sheet. Finally, as the district court noted, even if Deering had not visited Sanchez in December, this does not preclude the possibility that Deering discussed with Sanchez the essential terms of the government's first plea offer in October and November.

In sum, while the record contains some evidence to support Sanchez's position, stronger evidence suggests that Deering had, in fact, conveyed the government's first plea offer to Sanchez and thoroughly discussed it with him. Accordingly, the district court did not clearly err in finding the latter scenario to be true. *See United States v. Holloway*, 74 F.3d 249, 252 (11th Cir. 1996) ("If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as trier of fact, it would have weighed the evidence differently." (quotation omitted)).

Because Sanchez has failed to establish that his trial counsel performed deficiently, we affirm the denial of his § 2255 motion without addressing

prejudice. *See Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069 (stating that a court need not address both components of the ineffective-assistance inquiry "if the defendant makes an insufficient showing on one.").

**AFFIRMED.**